**Mark WOJCIK, Plaintiff-Appellant,**

v.

**Dr. Rodolfo ALMASE, et al., Defendants-Appellees.**

**No. 3–782A140.**

Court of Appeals of Indiana, Third District.

July 11, 1983.

Rehearing Denied Sept. 7, 1983.

---

Dawn E. Wellman, Cohen & Thiros, Merrillville, for plaintiff-appellant.

James H. Pankow, South Bend, for defendant-appellee Deseret Mfg.

Richard Hanning, Hammond, for defendants-appellees Kamen Medical Corp. and Dr. Kamen.

Lloyd Allen, South Bend, for defendant-appellee Dr. Ayoub.

David C. Jensen, Hammond, for defendants-appellees.

GARRARD, Judge.

Mark Wojcik (Wojcik) was injured in a motorcycle accident in June of 1978. Upon admission to the hospital he came under the general care of Dr. Rodolfo Almase. Due to the severity of Wojcik's injuries Drs. Jack Kamen and A.H. Ayoub, anesthesiologists employed by Kamen Medical Corporation, inserted a subclavian catheter to permit direct feeding.

At some point after insertion a section of the catheter broke off and became lodged in Wojcik's chest. This fact went undetected, and in October of 1978 Wojcik was discharged from the hospital with the piece of catheter tubing still in his body. The catheter was not discovered until May 1, 1979 when an x-ray was taken in the course of a re-employment examination.

On April 3, 1981 Wojcik filed a claim with the Indiana Commissioner of Insurance in which he alleged that Drs. Kamen and Ayoub's failure to discover the broken piece of catheter constituted malpractice. Wojcik also filed a complaint in the Lake Circuit Court[1] in which he alleged that Deseret Manufacturing Company (Deseret) had manufactured the catheter in a defective condition.

Pursuant to IC 16–9.5–10–1 Drs. Kamen and Ayoub filed motions for preliminary determination of their statute of limitations defenses and motions for leave to intervene in the court proceedings as party defendants. The trial court granted the motions for leave to intervene, and both doctors filed motions for summary judgment on the ground that Wojcik's claim was barred by the statute of limitations. (IC 16–9.5–3–1). Deseret likewise filed a motion for summary judgment alleging *inter alia* that the statute of limitations for products liability actions (IC 33–1–1.5–5) had run.

It is from the entry of summary judgments in favor of Drs. Kamen and Ayoub and Deseret that Wojcik appeals.

## I.

The statute of limitations for medical malpractice actions is found at IC 16–9.5–3–1. The section provides that:

"No claim, whether in contract or tort, may be brought against a health care provider based upon professional services or health care rendered or which should have been rendered unless filed within two years from the date of the alleged act, omission or neglect except that a minor under the full age of six years shall have until his eighth birthday in which to file. This section applies to all persons regardless of minority or other legal disability."

Cases interpreting the similar predecessor version (IC 34–4–19–1) of the current statute have held that the limitation is an occurrence statute, not a discovery statute. In other words the statutory period begins to run as of the date of the malpractice, not as of the date the plaintiff learns of his injury. *See, e.g., Alwood v. Davis* (1980), Ind.App., 411 N.E.2d 759, 760; *Carrow v. Streeter* (1980), Ind.App., 410 N.E.2d 1369, 1373; *Toth v. Lenk* (1975), 164 Ind.App. 618, 330 N.E.2d 336, 338.

The parties agree that Drs. Kamen and Ayoub's involvement with Wojcik began on June 26, 1978 and ended on September 21, 1978. Any act of malpractice they might have committed would, therefore, have had to occur in this period. Because Wojcik commenced his action on April 3, 1981, more than two years after the doctors' last contact with him, it would appear from the face of the complaint that summary judgment was proper unless the doctors are for some reason precluded from asserting the statutory bar.

Wojcik argues that the statute of limitations should not bar his action because the

1. The action was later venued to the Porter Superior Court.

doctors committed a constructive fraud by failing to inform him of the broken catheter section in his body. Wojcik's argument is founded on the Supreme Court's decision in *Guy v. Schuldt* (1956), 236 Ind. 101, 138 N.E.2d 891. In that case the court said:

> "It is established by the overwhelming weight of authority that equity will step in with its doctrine of estoppel to prevent an inequitable resort to the statute of limitations by one who has intentionally and fraudulently concealed a cause of action from a party for such length of time that the statute has run."

138 N.E.2d at 894, and

> "A cause of action normally accrues when the injurious action occurs although the plaintiff may not learn of the injurious act until later. However, if there is a concealment which prevents the plaintiff from learning of the cause of action, the statute is tolled during such concealment.
>
> \* \* \* \* \* \*
>
> Usually, there must be some active effort on the part of one to be guilty of concealment but where a fiduciary or confidential relationship exists, such as physician-patient, there exists a duty to disclose material information between the parties and a failure to do so results in concealment.
>
> \* \* \* \* \* \*
>
> "There are some statements to the effect that in cases of fraud the action accrues when the plaintiff first learns of the wrong. This is correct where the fraud is of a continuous character and active concealment continues to exist. But where the duty to inform exists by reason of a confidential relationship, when that relationship is terminated the duty to inform is also terminated; concealment then ceases to exist. After the relationship of physician and patient is terminated the patient has full opportunity for discovery and no longer is there a reliance by the patient nor a corresponding duty of the physician to

advise or inform. The statute of limitations is no longer tolled by any fraudulent concealment and begins to run."

138 N.E.2d at 895.

The question of when a doctor-patient relationship is terminated, thus terminating reliance and starting the limitation period to run, has generated some discussion in Indiana appellate decisions. In *van Bronckhorst v. Taube* (1976), 168 Ind.App. 132, 341 N.E.2d 791, the plaintiff, van Bronckhorst, lost sight in his right eye. Dr. Taube, van Bronckhorst's ophthalmologist, represented that the loss of sight was caused by glaucoma, that nothing could be done about it, and that he need not return for any further treatment. This diagnosis was later confirmed by another ophthalmologist, and it was not until eight years later that van Bronckhorst learned that his loss of sight was caused by Taube's negligence. The court held that van Bronckhorst's complaint was not barred by the statute of limitations.

Judge Sullivan wrote in *van Bronckhorst* that the section from *Guy* we have quoted above:

> "... if taken out of context, is supportive of the doctors' position that fraudulent concealment absolutely and automatically ceases to 'toll' the limitations statute when doctor and patient part. Such language may not be properly so construed and is in fact anomalous to the holding of the *Guy* case.
>
> \* \* \* \* \* \*
>
> The inescapable implication of the Supreme Court's reversal in *Guy* is that the court there contemplated a 'fraudulent concealment' which continues to toll the statute *after* the professional relationship terminates."

341 N.E.2d at 796. On the basis of Taube's representations concerning what van Bronckhorst's condition would be like in the future the court concluded that the doctor-patient relationship extended beyond the parties' last meeting.[2]

---

**2.** *van Bronckhorst* differs from the present case in one important aspect: it dealt with active as

opposed to constructive fraud. *See Carrow, supra,* 410 N.E.2d at 1373. Wojcik's motion to

*Guy* and *van Bronckhorst* were both analyzed in *Carrow v. Streeter, supra,* 410 N.E.2d 1369. Discussing when constructive fraud ceases to toll the running of the statute of limitations, the *Carrow* court said:

"In *van Bronckhorst* there was dictum to the effect that *Guy* should not be construed to imply that the last visit of the patient to the physician automatically ceases to toll the statute of limitations.... Thus, *Guy* cannot be taken to mean that termination of the physician-patient relationship ceases to toll the statute of limitations, if termination is defined as the last visit to a physician."

410 N.E.2d at 1376. The court added:

"Continuation of the physician-patient relationship [beyond the parties' last meeting] may be determined by several factors which tend to show mutual assent to a course of treatment. *See Toth v. Lenk, supra* (Hoffman, J., concurring). Such factors are, for example, the frequency of visits, whether a course of treatment was prescribed by the doctor (to be followed with or without consultation), the nature of the illness, the nature of the physician's practice and whether the patient began consulting other physicians for the same malady. *Adams v. Luros* (1980), Ind.App., 406 N.E.2d 1199."

410 N.E.2d at 1376–77.

*Carrow* reversed a summary judgment entered in favor of the defendant-doctor based on the statute of limitations because a genuine issue of material fact concerning when the doctor-patient relationship ended was raised by the doctor's representation that the plaintiff's pain would take a couple of years to go away. The absence of further contact between the parties was found not to be inconsistent with the plaintiff's continued reliance on the doctor.

*Adams v. Luros* (1980), Ind.App., 406 N.E.2d 1199, like *Carrow,* reversed a summary judgment entered in favor of the defendant-doctor because the doctor's representation that the plaintiff "had to live

with the problem until it got better or worse" made it impossible to say that the patient ceased relying on his doctor more than two years prior to the filing of the complaint. The court stated:

"We feel, under *Guy* that it is theoretically possible that a duty to disclose continues, as long as there is a physician-patient relationship, even though there may not be an actual consultation for a period of time. In short, we do not think the relationship *necessarily,* as a matter of law, ends at the last consultation."

406 N.E.2d at 1201, n. 2.

■ Each of these cases is concerned with determining when a patient ceases to reasonably rely on his doctor's judgment. We agree with the proposition that where a doctor represents that a certain condition is to be expected to continue into the future or prescribes a course of treatment to be followed for a period of time, a constructive fraud can be found which will delay the running of the statute of limitations for the time the doctor has indicated. However, we also believe that where no such representations are made the patient's reliance does not continue beyond the time he and the doctor ceased their association.

■ Wojcik attempts to persuade us that his dismissal from the hospital constituted a representation that he was well and need take no course of action in the future regarding his ailment. We cannot agree for two reasons. First, unlike the representations in *Carrow* and *Adams,* the mere act of dismissing a patient from the hospital carries with it no representation that would cause a patient to ignore his suspicion that his doctor may have been mistaken in diagnosis or treatment and to forego further investigation. As we said in *Toth v. Lenk* (1975), 164 Ind.App. 618, 330 N.E.2d 336, 341:

"Thus, in lay language, where the patient knows or concludes that something is wrong in the diagnosis or treatment he

correct errors contains no reference to active fraud, and the issue cannot be raised for the first time on appeal.

has been given, he is chargeable as a matter of law with the additional knowledge he would have procured had he exercised diligence to discover it."

Secondly, if we were to accept Wojcik's argument every mistaken diagnosis of good health would be converted into a constructive fraud. This result would unjustifiably extend the limitation period well beyond the last contact between the doctor and patient and would frustrate the legislature's intent to impose limits on malpractice actions to maintain the availability of health care and to hold down its cost.[3]

Drs. Kamen and Ayoub made no representations to Wojcik that would affect his ability to discover the alleged malpractice and therefore we agree with the trial court's finding that Wojcik's relationship with the doctors, and his reliance on them, ended on September 21, 1978. Wojcik's complaint was thus filed beyond the limitation period, and entry of summary judgment was proper.

## II.

■ Wojcik's cause of action against Deseret for defective manufacture of the catheter is subject to the provisions of Indiana's products liability act. IC 33–1–1.5–1 et seq. IC 33–1–1.5–5 provides that:

> "This section applies to all persons regardless of minority or legal disability. Notwithstanding IC 34–1–2–5, any product liability action must be commenced within two (2) years after the cause of action accrues or within ten (10) years after the delivery of the product to the initial user or consumer; except that, if the cause of action accrues more than eight (8) years but not more than ten (10) years after that initial delivery, the action may be commenced at any time within two (2) years after the cause of action accrues."

In their briefs Wojcik and Deseret have argued the effect of the statute of limitations by focusing on the date of his original and amended complaints. In his original complaint, filed April 3, 1981, Wojcik alleged defective manufacture on the part of an unknown "Doe Corporation." It was not until his amended complaint, filed July 16, 1982, that Wojcik identified Deseret as the manufacturer and accomplished service of process upon it.

Both parties have premised their arguments on the idea that the statute of limitations began to run on May 1, 1979—the date the catheter was discovered by x-ray. Wojcik contends that his amended complaint relates back to the date of the original complaint pursuant to Trial Rule 15(C) and thus falls within the statutory period. Deseret responds that the amended complaint does not relate back and that the amended complaint, which was Deseret's first notice of the action, was untimely filed.

■ We conclude that the parties have misconstrued the date upon which the statute of limitations began to run. IC 33–1–1.5–1 states that a product liability action must be commenced within two years after the cause of action *accrues*. A cause of action accrues when all the elements necessary for recovery are met. The elements of a product liability action, as set forth in IC 33–1–1.5–3, that a plaintiff must establish are:

1. a seller has sold a product in a defective condition unreasonably dangerous to any user or consumer;

2. the defect has caused physical harm to the user or consumer; and

3. the user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition.[4]

---

3. *See Rohrabaugh v. Wagoner* (1980), Ind., 413 N.E.2d 891, 894.

4. The seller must also be engaged in the business of selling such a product and it must be expected to and in fact reach the user or consumer without substantial change in the condition in which it was sold. IC 33–1–1.5–3(a)(1) and (2).

 For purposes of the present case only the second element is pertinent and we conclude that Wojcik was harmed by Deseret's allegedly defective manufacture of the catheter on the date it broke off in his body, not on the date its presence was discovered by x-ray. Since the catheter was inserted and removed between June 26 and September 21, 1978, it would have broken during that time. Thus, even accepting all of Wojcik's allegations as true, including his relation back argument, his original complaint was filed more than two years after his cause of action accrued.[5]

In addition, it does not appear that Wojcik's amended complaint adding Deseret as a party would relate back so as to avoid the statute of limitations. TR 15(C); *Chrysler Corp. v. Alumbaugh* (1976), 168 Ind.App. 363, 342 N.E.2d 908; *Gibson v. Miami Valley Milk Producers, Inc.* (1973), 157 Ind.App. 218, 299 N.E.2d 631.

Entry of summary judgment in favor of Deseret was proper.

Affirmed.

HOFFMAN, P.J., concurs and files separate opinion.

STATON, J., concur.

HOFFMAN, Presiding Judge, concurring.

I concur in the majority except that part discussing *van Bronckhorst v. Taube et al.* (1976), 168 Ind.App. 132, 341 N.E.2d 791.

*Van Bronckhorst* attempts to modify *Guy v. Schuldt et al.* (1956), 236 Ind. 101, 138 N.E.2d 891, and *Toth v. Lenk* (1975), 164 Ind.App. 618, 330 N.E.2d 336. With that attempt I am not in agreement. As I stated in my concurring opinion in *Weinstock v. Ott* (1983), Ind.App., 444 N.E.2d 1227, at 1241, *van Bronckhorst* should be rejected.

---

5. Wojcik's contention that IC 33–1–1.5–5 actually gives him ten years in which to bring his suit has already been rejected by our Supreme Court in *Dague v. Piper Aircraft Corp.* (1981), Ind., 418 N.E.2d 207.