Orvil T. BRASWELL and Parlee K. Braswell, et al., Plaintiffs-Appellants,

v.

FLINTKOTE MINES, LTD., et al., Defendants-Appellees.

Nos. 82–2699, 82–2702 to 82–2705, and 82–2727 to 82–2733.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 23, 1983.

Decided Dec. 6, 1983.

Rehearing Denied Jan. 16, 1984.

Richard Andrew Young, Young & Young, Indianapolis, Ind., for plaintiffs-appellants.

Douglas B. King, Wooden, McLaughlin & Sterner, Richard R. McDowell, Hill, Fulwider & McDowell, Indianapolis, Ind., Jeffrey R. Frank, Evansville, Ind., for defendants-appellees.

Before CUMMINGS, Chief Judge, and SWYGERT and POSNER, Circuit Judges.

CUMMINGS, Chief Judge.

This consolidated appeal involves seven plaintiffs who were employed by the World Bestos Division of the Firestone Tire and Rubber Company at its plant in New Castle, Indiana. Plaintiffs and their spouses have filed claims for damages based upon exposure to asbestos manufactured or supplied by the defendants. Each of the plaintiff-employees seeks damages for asbestosis, and their spouses claim lack of consortium. The workers were employed at jobs which exposed them to asbestos fiber in varying degrees and amounts over varying lengths of time. The first plaintiff to be exposed (Obert F. Moore) was initially exposed to the asbestos fibers in 1943, and no plaintiff was initially exposed later than 1964.

The first of the seven diversity actions was commenced by Orvil T. Braswell on November 30, 1979, against the several defendants which allegedly furnished or manufactured asbestos for the World Bestos plant. Braswell was employed at the plant from 1950 until 1975, at which time his exposure to asbestos ceased. He apparently first noticed symptoms of his condition in 1972 and was informed by his physician in late 1979 that he had an asbestos-related disease.

The other six actions were commenced by plaintiffs between January and July of 1981. Exposure to asbestos manufactured by at least one of the defendants with respect to these six plaintiffs ceased in the following years: 1963 (James T. Clapp), 1969 (Omer T. Rogers), 1974 (William M. Baker), 1979 (Helen M. Igo), 1979 (Robert E. Godfrey). Like Braswell, none of the other plaintiffs filed their complaints within two years of their most recent exposure to asbestos.[1] The parties dispute at what time these plaintiffs were first cognizant of

---

1. Only plaintiffs Igo and Godfrey came close to filing within two years of their most recent exposure. Helen Igo filed on April 14, 1981; as the trial court found, shipments of asbestos from defendants Raybestos-Manhattan, Inc. and Asbestos Corporation, Ltd., which were the most recent shipments to the World Bestos plant, could not have contaminated Ms. Igo later than December 31, 1978, and April 13, 1979, respectively. (App. 125, 138). In regard to Robert Godfrey, who filed on July 2, 1981, the trial court found no contamination was possible from Raybestos-Manhattan asbestos after December 31, 1978, nor from Asbestos Corporation asbestos after July 1, 1979. (App. 164, 174). Plaintiffs do not challenge the accuracy of these trial court findings.

their conditions and, as to some plaintiffs, when they were first diagnosed by a physician to have an asbestos-related disease.

The trial court in these consolidated actions granted summary judgment in favor of defendants on the ground that plaintiffs' actions were time-barred by Indiana statutes of limitations. Additionally, the court granted motions to dismiss for lack of in personam jurisdiction in favor of defendants Bell Asbestos Mines, Ltd. and Flintkote Mines, Ltd. The court also granted summary judgment in favor of Raybestos-Manhattan, Inc. on all product liability counts on the ground that the defendant was not engaged in the business of selling asbestos. Defendant Lake Asbestos of Quebec, Ltd. has settled with the plaintiffs during the pendency of this appeal.

## I

■ Plaintiffs argue that the statute of limitations in Indiana's Product Liability Act, Ind.Code § 33–1–1.5–5 (1981), violates plaintiffs' due process rights guaranteed by the Fourteenth Amendment. Section 33–1–1.5–5 states:

> Sec. 5. Statute of Limitations. This section applies to all persons regardless of minority or legal disability. Notwithstanding IC 34–1–2–5, any product liability action must be commenced within two (2) years after the cause of action accrues or within ten (10) years after the delivery of the product to the initial user or consumer; except that, if the cause of action accrues more than eight (8) years but not more than ten (10) years after the initial delivery, the action may be commenced at any time within two (2) years after the cause of action accrues.

Thus § 33–1–1.5–5 provides for a two-year statute of limitations, limited by a ten-years-from-delivery clause.[2]

As an initial matter, it should be noted that prior to June 1, 1978, the date of enactment of § 33–1–1.5–5, the Indiana statute of limitations applicable in these types of actions was Ind.Code § 34–1–2–2 (1976), which states that actions "[f]or injuries to person [shall be brought] within two years ...." Plaintiffs on appeal have not directly challenged the constitutionality of § 34–1–2–2, yet § 34–1–2–2 was invoked by the district court as the basis for granting summary judgment in favor of defendants on most claims. Under the district court's analysis, each plaintiff's cause of action accrued when the plaintiff was last exposed to asbestos from a particular manufacturer or supplier. Since five of the seven exposed plaintiffs were last exposed prior to June 1, 1978, the enactment date of § 33–1–1.5–5, the trial court reasonably concluded that Ind.Code § 34–1–2–2 should apply to these plaintiffs. Section 33–1–1.-5–5 bars only those actions of two plaintiffs against defendants who supplied asbestos which contaminated those plaintiffs after June 1, 1978.[3] Since, as discussed *infra,* this Court concurs in the trial court's holding that accrual occurs no later than at the time of the most recent exposure, the constitutional challenge to § 33–1–1.5–5 alone does not impact most of the plaintiffs' claims herein for § 34–1–2–2 must also be considered.

Plaintiffs' contention that Ind.Code § 33–1–1.5–5 violates due process cannot be accepted. The policy behind statutes of limitations was recently articulated in *United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 356–357, 62 L.Ed.2d 259, in which the constitutionality of a two-year federal statute of limitations was upheld:

> Statutes of limitations which "are found and approved in all systems of enlightened jurisprudence," *Wood v. Car-*

---

2. The Supreme Court of Indiana in *Dague v. Piper Aircraft Corp.,* 418 N.E.2d 207 (Ind.1981) reasonably interpreted the ten-year clause to require that the action be brought within two years after it accrues, but in any event within ten years after the product is first delivered, unless the action accrues more than eight but less than ten years after delivery.

3. The trial court also noted that in regard to several defendants whose deliveries of asbestos ceased in the 1960's, the ten-years-from-delivery clause of § 33–1–1.5–5 would bar the actions if § 33–1–1.5–5 were to be applied.

*penter,* 101 U.S. 135, 139 [25 L.Ed. 807] (1879), represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that "the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Railroad Telegraphers v. Railway Express Agency,* 321 U.S. 342, 349 [64 S.Ct. 582, 586, 88 L.Ed. 788] (1944). These enactments are statutes of repose; and although affording plaintiffs what the legislature deems a reasonable time to present their claims, they protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise. *United States v. Marion,* 404 U.S. 307, 322, n. 14 [92 S.Ct. 455, 464 n. 14, 30 L.Ed.2d 468] (1971); *Burnett v. New York Central R. Co.,* 380 U.S. 424, 428, [85 S.Ct. 1050, 1054, 13 L.Ed.2d 941] (1965); *Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 314, [65 S.Ct. 1137, 1142, 89 L.Ed. 1628] (1945); *Missouri, K. & T.R. Co. v. Harriman,* 227 U.S. 657, 672, [33 S.Ct. 397, 401, 57 L.Ed. 690] (1913); *Bell v. Morrison,* 1 Pet. 351, 360, 7 L.Ed. 174 (1828).

Section 2401(b), the limitations provision involved here, is the balance struck by Congress in the context of tort claims against the Government; and we are not free to construe it so as to defeat its obvious purpose, which is to encourage the prompt presentation of claims. *Campbell v. Haverhill,* 155 U.S. 610, 617, [15 S.Ct. 217, 220, 39 L.Ed. 280] (1895); *Bell v. Morrison, supra,* [1 Pet.] 360, [7 L.Ed. 174]. We should regard the plea of limitations as a "meritorious defense, in itself serving a public interest." *Guaranty Trust Co. v. United States,* 304 U.S.

126, 136, [58 S.Ct. 785, 790, 82 L.Ed. 1224] (1938).

This Court finds Indiana's Product Liability Act, Ind.Code § 33–1–1.5–5 to be consistent with the above-stated policies which support statutes of limitations. This finding echoes that in *Pitts v. Unarco Industries, Inc.,* 712 F.2d 276 (7th Cir.1983), in which this Court rejected a due process challenge to this very statute by a representative of an asbestosis victim. We discern no justifiable grounds upon which to disturb our prior holding. See also *Scalf v. Berkel, Inc.,* 448 N.E.2d 1201 (Ind.App.1983) (Court of Appeals of Indiana finding that § 33–1–1.5–5 is rationally related to a legitimate state purpose).

The Sixth Circuit in *Mathis v. Eli Lilly & Co.,* 719 F.2d 134.(6th Cir.1983), held that a Tennessee statute of limitations that bars product liability actions brought more than ten years after the product was purchased does not violate due process, even though it may operate to extinguish some claims before injury actually becomes manifest. Similar to the ten-years-from delivery clause of Ind.Code § 33–1–1.5–5, the statute at issue in *Mathis,* Tenn.Code § 29–28–103 (1979) imposed with some exceptions a ten-year limit on bringing actions against manufacturers and sellers dating from the time the product was "first purchased for use...." [4] The plaintiff sought damages for personal injury due to her in utero exposure to diethylstilbestoral (DES), a drug developed as a synthetic hormone to prevent miscarriages. Plaintiff alleged that her mother took DES in 1955, without knowledge that the drug might cause cancer in her offspring. Further, she alleged that she did not know she had developed cancer of the cervix until 1980. The trial court held that the action was barred by the Tennessee statute, and the Sixth Circuit affirmed, rejecting plaintiff's due process challenge. The Court recognized that there is a rational relationship between the Ten-

---

4. Unlike the Indiana Legislature, the Tennessee Legislature specifically exempted actions resulting from exposure to asbestos from the ten-year limitation. Tenn.Code § 29–28–103(b) (1979). The Indiana Legislature could have enacted a similar exemption but did not; moreover, the Tennessee statute still applies to other actions based on injuries which develop long after initial exposure, including DES-related actions.

nessee statute and the goals and purposes of the statute, including "the desire to encourage product manufacturers to provide goods without undue costs and risks, and to make product liability insurance more readily available...." *Mathis v. Eli Lilly & Co., supra,* at 139.

The reasonableness of statutes of limitations as applied in asbestosis claims was recognized by the Supreme Court of Indiana in *Bunker v. National Gypsum Co.,* 441 N.E.2d 8 (Ind.1982). There the claimant argued the three-years-from-exposure statute of limitations for recovery of benefits under the Indiana Occupational Disease Act, Ind.Code § 22–3–7–9(e) (1974), violated due process. The court rejected the argument, noting that "considerable deference should be accorded the manner in which the Legislature has balanced the competing interests involved." *Bunker v. National Gypsum Co.,* 441 N.E.2d at 13. We are in accord with this view, and reject plaintiffs' due process argument.

## II

Plaintiffs also contend that § 33–1–1.5–5 violates the equal protection clause of the Fourteenth Amendment. Plaintiffs focus upon the ten-year limitation provided by the statute, which requires that product liability actions be brought within ten years after the delivery of the product to the initial user or consumer. The crux of plaintiffs' argument is that the statute acts to create two classes of plaintiffs—those who discover their injury and bring an action within ten years of delivery, and those who do so after ten years and are thus time-barred—and that such a classification violates equal protection.

■ Plaintiffs' equal protection argument must also be rejected. In this action no fundamental right or suspect classification warranting strict scrutiny analysis has been identified; therefore the rational basis test is the proper one. See *Camille Corp. v. Phares,* 705 F.2d 223, 228 (7th Cir.1983); *DiAntonio v. Northampton-Accomack Memorial,* 628 F.2d 287, 291 (4th Cir.1980). The objectives of § 33–1–1.5–5 are rational,

as this Court commented in regard to this statute in *Pitts v. Unarco Industries, Inc.,* 712 F.2d at 280:

> The effect of this [statute] is to lessen the risk of loss—*i.e.,* from having to pay for injuries resulting from use of a defective product—manufacturers face when they place a product into a stream of commerce. That is a legitimate legislative purpose, and it is not the courts' business to instruct the Indiana legislature when it is better for consumers than producers to bear that risk.

■ Consistent with our decision in *Pitts v. Unarco Industries, Inc., supra,* we hold that it is not a denial of equal protection to bar product liability actions brought later than ten years after the product was delivered to the initial user or consumer. See also *Scalf v. Berkel, Inc., supra* (Court of Appeals of Indiana holding that the ten-years-from-delivery clause of § 33–1–1.5–5 does not violate equal protection).

## III

Plaintiffs also contend that the district court improperly held that a cause of action for asbestosis accrues at the time of the most recent exposure to the asbestos fibers. Plaintiffs argue that a cause of action accrues not until there is ascertainable damage, and that generally this will be when the condition is diagnosed, unless it is shown that the plaintiff should have known of the injury at an earlier date. Although there is some dispute as to when some of the plaintiffs first became aware of their conditions, it is clear that at least some of the plaintiffs first learned of their asbestosis not earlier than late 1979. And all plaintiffs filed no later than July 2, 1981. Therefore, unless plaintiffs should have known more than two years prior to filing that they had asbestosis, under plaintiffs' interpretation of accrual the two-year rule found in § 33–1–1.5–5, as well as in § 34–1–2–2, would be satisfied as to some plaintiffs.

Plaintiffs' interpretation of the Indiana law of accrual, however, contradicts con-

trolling precedent from the Supreme Court of Indiana. In *Shideler v. Dwyer*, 417 N.E.2d 281, 289 (Ind.1981), that court held that a cause of action accrues "when liability for wrong has arisen even though the injured party may be ignorant of the existence of the wrong or injury." *Schideler* was a malpractice case where the beneficiary of a provision in a will sued the attorney who drafted it because the provision was later declared invalid. The will was executed in October 1973, and the testator died in December 1973. The beneficiary did not receive payments due under the provision after November 1974. The provision was declared invalid on June 30, 1975 by the Probate Court, and the beneficiary sued the attorney on June 29, 1977. The attorney raised the two-year statute of limitations in Ind.Code § 34–1–2–2, contending that the cause of action accrued and the damage occurred when the testator died in 1973 and that the beneficiary's claim for malpractice was barred. The Supreme Court of Indiana agreed, holding that the damage occurred upon the testator's death, and that the statutory period of limitations began to run as of that date, and not on the date when the Probate Court declared the will's provision invalid. *Shideler v. Dwyer*, 417 N.E.2d at 290.

Thus the Supreme Court of Indiana rejected a "discovery" rule for the accrual of a cause of action, finding that, "[f]or a wrongful act to give rise to a cause of action and thus to commence the running of the statute of limitations, it is not necessary that the extent of the damage be known or ascertainable but only that the damage has occurred." *Shideler v. Dwyer*, 417 N.E.2d at 289.

■ As this Court's duty is to apply Indiana law, we hold that the causes of action herein accrued not when the injuries were discovered or susceptible of ascertainment,[5] but rather at the time of the wrongful act, which the trial court reasonably concluded to be no later than the most recent expo-

sure to asbestos fiber. Although Indiana courts have not explicitly held that the "wrongful act" or "impact" rule of accrual applies specifically in product liability actions against asbestos manufacturers, the *Shideler* court did cite with approval two New York decisions which applied such a rule in disease-related actions. In *Schwartz v. Heyden Newport Chemical Corp.*, 12 N.Y.2d 212, 237 N.Y.S.2d 714, 188 N.E.2d 142 (1963), amended on other grounds, 12 N.Y.2d 1073, 239 N.Y.S.2d 896, 190 N.E.2d 253 (1963), certiorari denied, 374 U.S. 808, 83 S.Ct. 1697, 10 L.Ed.2d 1032, the plaintiff was injected with a radio-opaque dye which resulted in carcinoma thirteen years later. The New York Court of Appeals held that the plaintiff's claim accrued when the wrong occurred, *i.e.,* at the impact of injection, and not when the plaintiff discovered the injury. *Shideler, supra,* also cited with approval *Schmidt v. Merchants Dispatch Transportation Co.*, 270 N.Y. 287, 200 N.E. 824 (1936), where it was held that the cause of action for a respiratory disease (pneumoconiosis) accrued when the plaintiff was exposed to the dust, not at the time when the dust so inhaled resulted in the disease, the latter date being estimable only by medical testimony.

Further, the Court of Appeals of Indiana has held that for purposes of the limitations period applicable under § 33–1–1.5–5, the action accrues not upon discovery, but rather at the time the plaintiff is harmed. *Wojcik v. Almase*, 451 N.E.2d 336, 341–42 (Ind.App.1983). There a product liability action was brought against the manufacturer of a catheter, which is inserted in the chest to permit direct feeding of patients. The court held that since plaintiff filed more than two years after the harm occurred, *i.e.,* the breaking of the catheter within the patient, Ind.Code § 33–1–1.5–5 barred the action. See also *Monsanto Co. v. Miller*, 455 N.E.2d 392 (Ind.App.1983) (rejecting the discovery rule).

---

**5.** If we were free to write upon a clean slate, we might adopt the discovery rule whose adherents are growing. See *Neubauer v. Owens-*

*Corning Fiberglas Corp.*, 686 F.2d 570 (7th Cir. 1982), certiorari denied, —— U.S. ——, 103 S.Ct. 1233, 75 L.Ed.2d 467.

The dissent seemingly overlooks the fact that the *Shideler* court invoked as primary support for its position and quoted at length decisions from other jurisdictions which expressly reject the view that a cause of action does not accrue until the damage is susceptible of ascertainment. See *Schwartz v. Heyden Newport Chemical Corp.; Schmidt v. Merchants Dispatch Transportation Co., supra.* As the Supreme Court of Indiana noted in regard to *Schmidt,* "the cause of action accrued when [plaintiff] inhaled the dust—more than three years before the action was commenced—not at the time when the dust so inhaled resulted in a disease of the lungs, which date could only be determined by medical testimony." *Schideler v. Dwyer,* 417 N.E.2d at 289. The *Shideler* court cited *Schmidt* for the rule of law that:

> The injury to the plaintiff was complete when the alleged negligence of the defendant caused the plaintiff to inhale the deleterious dust. For that injury, including all resulting damages, the defendant was then liable. The disease of the lungs was a consequence of that injury. Its result might be delayed, or, perhaps, even by good fortune averted; nevertheless, the disease resulted naturally, if not inevitably, from a condition created in the plaintiff's body through the defendant's alleged wrong. It cannot be doubted that the plaintiff might have begun an action against the defendant immediately after he inhaled the dust which caused the disease. No successful challenge could have been interposed on the ground that the action was prematurely brought because at the time it was commenced no serious damage to the plaintiff had yet developed. In that action the plaintiff could recover all damages which he could show had resulted or would result therefrom.

*Shideler v. Dwyer,* 417 N.E.2d at 290 (quoting *Schmidt v. Merchants Dispatch Transportation Co.,* 200 N.E. at 827). In light of the Supreme Court of Indiana's above-stated position, it is difficult to conceive that, as the dissent suggests, plaintiffs in the instant action would have been "laughed out of court" had they brought an action within two years of the time they were exposed to the asbestos fibers.

These decisions construing the meaning of the "accrual" of a cause of action indicate that under Indiana law the causes of action herein accrued when plaintiffs were last exposed to the asbestos. Since none of the actions herein were brought within two years of the most recent exposure, we hold that the district court was correct in concluding that the actions were barred by the two statutes of limitations considered herein.

Since our holding on the constitutional and accrual issues is dispositive of the case, it is unnecessary to address the other issues raised by plaintiffs on appeal.

Judgment affirmed.

SWYGERT, Senior Circuit Judge, dissenting.

Plaintiffs in this case are persons (and their spouses) who contracted asbestosis after long-term exposure to raw asbestos fibres in their workplace. The usual manifestation period for asbestosis is twenty to thirty years. *See* Deposition of Anthony Dowell, M.D., at 138, *Braswell* Record. Thus, in many instances an employee will have retired from employment and will have ceased to be exposed to asbestos fibres before the disease manifests itself. This is what happened to plaintiffs in this case.

To state the obvious, if an asbestosis claimant brought an action against manufacturers of asbestos before any manifestation of the disease, the claimant would be "laughed out of court," *Martinez-Ferrer v. Richardson-Merrell, Inc.,* 105 Cal.App.3d 316, 323, 164 Cal.Rptr. 591, 595 (1980). On the other hand, if the claimant waits for the disease to manifest itself, the claimant, under the court's holding today, may be barred from bringing a claim by Indiana's statute of limitations. This result is a mockery of justice.

In diversity actions such as this, the federal courts cannot and should not substitute their judgment for that of the state courts

on matters of state law. I do not believe that the Indiana Supreme Court has conclusively declared the result announced by the majority in this case. Particularly when the result is as unjust as it is here, this court has a duty to avoid creating state law if possible. Indiana's certification procedure should be used to give the Indiana Supreme Court an opportunity to decide an important point of Indiana law which directly affects the ability of Indiana residents to recover damages for debilitating injuries.

I disagree with the majority's finding that *Shideler v. Dwyer,* 417 N.E.2d 281 (Ind. 1981), the only case in which the Indiana Supreme Court has addressed the issue of a discovery rule, necessarily governs the present case. In *Shideler* the court held that a cause of action against an attorney for malpractice in drafting a will accrued when the testator died. The court rejected plaintiff's contention that the action did not accrue until the probate court found that the provision for plaintiff was void. *Shideler* can be distinguished from the present case on at least three grounds.

First, the court in *Shideler* expressly noted the possibility of adopting a different rule in a case in which "the misconduct was of a continuing nature or concealed . . . ." *Id.* at 291. In *Shideler,* the defendant's alleged negligence arose out of the single action of drafting the will and that negligence was at least *capable* of discovery any time after the contents of the will were disclosed, which necessarily occurred upon the death of the testator, if not before. *See also Wojcik v. Almase,* 451 N.E.2d 336, 342 (Ind.App.1983) (action against manufacturer of catheter that broke off in plaintiff's body).* In this case, plaintiffs complain of continued exposure to asbestos, the injury from which is not even capable of discovery in many instances on the date of last exposure.

Second, the holding in *Shideler* was expressly based, in part, on the particular relationship between plaintiff and defendant in the case: "We see no unique relationship between a lawyer who drafts a will and one who is merely the object of his client's bounty that calls for a special rule. Without more, there is no continuing obligation to the devisee." 417 N.E.2d at 291. The court recognized that a discovery rule may have "special merit" in other cases. *Id.* The court could find a discovery rule warranted in the case before us. Indiana is among the large number of states that have recognized special rules of liability for manufacturers. *See Ayr-Way Stores, Inc. v. Chitwood,* 261 Ind. 86, 92–93, 300 N.E.2d 335, 339–40 (1973); Ind.Code §§ 33–1–1.5–1 to 33–1–1.5–8. These rules of stricter liability exist, in part, because manufacturers are particularly able to bear the costs of compensation for injuries from their products. Certainly "large scale" enterprises such as asbestos manufacturers are in a better position than lawyers and doctors to absorb such costs. *See Magrine v. Krasnica,* 94 N.J.Super. 228, 237, 227 A.2d 539, 545 (Cty.Ct.1967), *aff'd sub nom. Magrine v. Spector,* 100 N.J.Super. 223, 241 A.2d 637 (App.Div.1968), *aff'd,* 53 N.J. 259, 250 A.2d 129 (1969). Moreover, manufacturers of products such as asbestos are more likely to anticipate long-delayed injuries from their products than are lawyers and doctors from their services. *Cf. Raymond v. Eli Lilly & Co.,* 117 N.H. 164, 173, 371 A.2d 170, 176 (1977) (anticipation of long-delayed effects of drugs by drug manufacturers). For these reasons, the concern for repose, which the court stressed in *Shideler,* has much less appeal in claims against manufacturers than in claims against lawyers. *But see Wojcik v. Almase, supra,* 451 N.E.2d at 344 (rejecting discovery rule in claim against catheter manufacturer).

Third, some of the claims in this case, depending upon when they are deemed to have accrued, would be governed by a dif-

---

* A decision of the Indiana Court of Appeals, an intermediate appellate court, is not binding on this court, but is relevant data entitled to "proper regard." *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967); *Garris v. Schwartz,* 551 F.2d 156, 158 (7th Cir.1977).

ferent statute of limitations from the one applied in *Shideler.* Any actions that are deemed to have accrued after June 1, 1978 would be governed by Indiana's new products liability statute of limitations, Ind.Code § 33–1–1.5–5. *See id.* § 33–1–1.5–8(b). Under this statute, products liability actions must be brought within ten years from the date that the product was delivered to the initial user or consumer, *and* within two years from the date of accrual of the cause of action. If not brought within the ten-year outside limitation period, the action is time barred regardless of when it accrued. *See Dague v. Piper Aircraft Corp.,* 418 N.E.2d 207, 210–11 (Ind.1981). The action in *Shideler* was governed by Indiana's tort statute of limitations, Ind.Code § 34–1–2–2, which provides only a two-year accrual period. 417 N.E.2d at 288. The Indiana Supreme Court could reasonably find that the products liability statute's ten-year outside limitation period guarantees sufficient repose for manufacturers to permit the accrual period to be measured from the date of discovery of the injury. *But see Wojcik v. Almase, supra,* 451 N.E.2d at 341–42 (rejecting discovery rule in products liability action governed by Ind.Code § 33–1–1.5–5).

In sum, the Indiana Supreme Court might decline to apply a discovery rule in this case, but that result is not compelled by the court's holding in *Shideler.*

Most tort statutes of limitation were originally written and construed long before the advent of modern toxic diseases such as asbestosis. The California Court of Appeals, applying a discovery rule in a case involving an injury caused by the drug MER/29 that manifested itself sixteen years after the drug was last ingested, explained:

> The simple fact is that rules developed against the relatively unsophisticated backdrops of barroom brawls, intersection collisions and slips and falls lose some of their relevance in these days of miracle drugs with their wondrous, unintended, unanticipated and frequently long delayed side effects .... "[T]he response of the courts to advances in science and technology can be either to adhere rigidly to prior doctrine, denying recovery to those injured by such products, or to fashion remedies to meet these changing needs." (*Sindell v. Abbott Laboratories* (1980) 26 Cal.3d 588, 610, 163 Cal.Rptr. 132, 144, 607 P.2d 924, 936.)

*Martinez-Ferrer v. Richardson-Merrell, Inc., supra,* 195 Cal.App.2d at 324, 164 Cal.Rptr. at 595. These rules are similarly irrelevant in cases involving latent diseases from toxic substances. Thus, many courts, following the logic of the California courts, have adopted discovery rules in latent disease cases. *See, e.g., Nolan v. Johns-Manville Asbestos,* 85 Ill.2d 161, 166–71, 52 Ill.Dec. 1, 3–5, 421 N.E.2d 864, 866–68 (1981); *Louisville Trust Co. v. Johns-Manville Products Corp.,* 580 S.W.2d 497, 501 (Ky.1979); *Harig v. Johns-Manville Products Corp.,* 284 Md. 70, 78–82, 394 A.2d 299, 304–06 (1978) (questions certified to state court by district court); *Hutchison v. Semler,* 227 Or. 437, 446, 361 P.2d 803, 807, 362 P.2d 704, 704 (1961) (silicosis from exposure to silica dust); *Coyne v. Porter-Hayden Co.,* 286 Pa. Super. 1, 5, 428 A.2d 208, 210 (1981).

Indiana's two-year accrual period for actions for personal injuries dates back to 1881. 1881 Ind. Acts (Spec.Sess.) ch. 38, § 38, p. 240. The Indiana courts have never construed its meaning in a claim involving a latent disease such as asbestosis. The Indiana Supreme Court should be given an opportunity to follow the equitable lead of other state courts and to construe its state statutes to meet the changing needs of a modern, technologically advanced society. I would certify to the Indiana Supreme Court, pursuant to Ind.Code § 33–2–4–1, the questions: When does a products liability action against a manufacturer of asbestos for asbestosis caused by exposure to the manufacturer's product accrue under (1) Indiana's tort statute of limitations, Ind.Code § 34–1–2–2, and (2) Indiana's products liability statute of limitations, Ind.Code § 33–1–1.5–5?

Even assuming that the rule announced in *Shideler* governs this case, the majority misapplied that rule here. In *Shideler,* the

court held that a cause of action accrues when the injury to plaintiff occurs. 417 N.E.2d at 289. Contrary to the finding of the New York Court of Appeals that the injury in an asbestosis case is the inhalation of the asbestos dust, *Schmidt v. Merchants Dispatch Transportation Co.,* 270 N.Y. 287, 300–01, 200 N.E. 824, 827 (1936),** the injury in such cases is the disease itself. *See Locke v. Johns-Manville Corp.,* 221 Va. 951, 903–905, 275 S.E.2d 900, 904–05 (1981); Vargo & Leibman, *Survey of Recent Developments in Indiana Law-Products Liability,* 12 Ind.L.Rev. 227, 253 n. 184 (1979); *cf. Monsanto Co. v. Miller,* No. 1–783 A 213, slip op. at 5, 9–10 (Ind.App. Sept. 23, 1983) (injury from PCB in feed silo occurred and cause of action accrued under Indiana law when the level of PCBs in the herd's milk first reached an impermissible level, not when the contaminated silage was fed to plaintiff's herd); Ind.Code § 33–1–1.5–3 (products liability action requires "physical harm" to user or consumer). The date of inhalation of asbestos dust most closely corresponds to the date on which the lawyer in *Shideler* drafted the will; these were the points of time at which the defendants' last actions concerning or contacts with plaintiffs occurred. The court in *Shideler* expressly rejected the argument that the inju-

ry occurred and the cause of action accrued at this time. 417 N.E.2d at 290.

Under *Shideler,* plaintiffs' actions accrued when their asbestosis first "occurred." Although it may be difficult to determine when a progressive disease such as asbestosis first occurs, the date of last exposure is clearly irrelevant to that determination. *See Locke v. Johns-Manville Corp., supra,* 275 S.E.2d at 905. Plaintiffs' asbestosis could have begun to develop any time before or after that date. Thus, even if *Shideler* is deemed to govern this case, the case must be remanded to the district court for determinations of the dates on which plaintiffs' injuries occurred. *See Monsanto Co. v. Miller, supra,* 455 N.E.2d at 397–398 (remanded to district court for factual determination concerning when cause of action accrued).

Finally, I believe that the majority erred in failing to address the personal jurisdiction issue on appeal in this case. The district court held that it had no personal jurisdiction over defendants Flintkote Mines, Ltd. and Bell Asbestos Mines, Ltd. and dismissed plaintiffs' claims against these defendants. The district court held that the claims against Flintkote Mines, Ltd. were, in the alternative, time barred by Indiana's statute of limitations, but made no alternative holding with respect to

** As the majority notes, the *Shideler* court quoted at length from this case and cited *Schwartz v. Heyden Newport Chemical Corp.,* 12 N.Y.2d 212, 216–17, 237 N.Y.S.2d 714, 717, 188 N.E.2d 142, 143–44 (1963), in which the New York Court of Appeals held that a cause of action to recover damages for cancer allegedly resulting from an injection of a radio-opaque dye accrued at the time the drug was injected rather than at the time the injury became apparent. I try to point out in this dissent other statements contained in the *Shideler* opinion and other decisions of the Indiana courts indicating that Indiana might not apply the New York rule in the present case despite this dictum in *Shideler.* I believe that the Indiana Supreme Court should be permitted to resolve these apparent conflicts. I should also note that even New York has moved away from its harsh rule in several instances. *See, e.g., Simcuski v. Saeli,* 44 N.Y.2d 442, 449, 406 N.Y.S.2d 259, 262, 377 N.E.2d 713, 716 (1978) (defendant estopped from raising statute of limitations as a defense to a tort action where defendant fraudulently

concealed the tortious activity from plaintiff); *Flanagan v. Mount Eden General Hospital,* 24 N.Y.2d 427, 430–32, 301 N.Y.S.2d 23, 26–27, 248 N.E.2d 871, 872–32 (1969) (adopting discovery rule in malpractice actions involving foreign objects left in patient's body); *Borgia v. City of New York,* 12 N.Y.2d 151, 155–56, 237 N.Y.S.2d 319, 321–22, 187 N.E.2d 777, 778–79 (1962) (statute of limitations for malpractice action stayed when course of treatment, which includes wrongful acts or omissions, has run continuously); N.Y. Civil Prac.Law § 214–b (1981 N.Y.Laws ch. 266, § 3) (enacting discovery rule for claims involving injuries from "Agent Orange"). *See generally Angie v. Johns-Manville Corp.,* 94 App.Div.2d 939, 463 N.Y.S.2d 956, 957 (1983) ("a number of judicial decisions and legislative enactments designed to relieve to some degree the harshness of New York's general rule that a personal injury claim accrues at the time the injury or invasion of the body occurs, not at the time the injury was or could reasonably have been discovered").

Bell Asbestos Mines, Ltd. The court made no findings of fact as to plaintiffs' last exposure to asbestos manufactured by Bell Asbestos. I believe that the court's jurisdictional holding was in error. In the absence of an alternative holding or findings of fact, the claim against Bell Asbestos must be remanded to the district court.

Indiana's long-arm statute, Ind.Trial Rule 4.4(A), subjects these defendants to the jurisdiction of the Indiana courts unless the exercise of jurisdiction would contravene the due process clause. *See Valdez v. Ford, Bacon and Davis, Texas, Inc.,* 62 F.R.D. 7, 14 (N.D.Ind.1974); *Griese-Traylor Corp. v. Lemmons,* Ind.App., 424 N.E.2d 173, 180 (1981). The exercise of personal jurisdiction over these defendants raises no due process concerns.

This case is a far cry from *World-Wide Volkswagen v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), in which the Supreme Court held that an Oklahoma court could not exercise personal jurisdiction over a New York automobile distributor or dealer merely because it was foreseeable that plaintiff would drive his car into other states including Oklahoma. In this case, defendants knowingly transacted business on a continuous basis with Indiana companies and reaped the profits from these transactions.

In *Nelson v. Park Industries, Inc.,* 717 F.2d 1120 (7th Cir.1983), this court held that the Wisconsin courts had personal jurisdiction over a foreign manufacturer and distributor for injuries sustained in Wisconsin from one of their shirts. The manufacturer and distributor conducted all of their business in Hong Kong. The shirt in question was purchased from the distributor in Hong Kong by Woolworth, and placed in a Woolworth store in Wisconsin where it was ultimately bought by the mother of the injured child. The court refused to permit defendants to escape the jurisdiction of the Wisconsin courts by simply performing their sales transactions in a foreign jurisdiction. The manufacturer and distributor "were aware of the Woolworth distribution scheme and derived economic benefit from selling the flannel shirts they placed into and moved along the stream of commerce. We conclude that [they] were participating in that distribution system such that they should reasonably anticipate being haled into court in a forum where the system brought a shirt that allegedly caused injury." *Id.* at 1127.

If the manufacturer and distributor in *Nelson* were subject to the jurisdiction of the Wisconsin courts, there can be no doubt that Flintkote Mines and Bell Asbestos are subject to the jurisdiction of the Indiana courts. They sold their products directly to Indiana companies, derived economic benefits from those sales, and must anticipate being haled into court in Indiana for injuries allegedly sustained there from their products.

For the foregoing reasons, I would certify the statute of limitations question to the Indiana Supreme Court, and would remand the claims against defendant Bell Asbestos Mines, Ltd. to the district court.