Tim SINKS, Appellant–Respondent,

v.

Krista L. CAUGHEY, Appellee–Petitioner.

No. 49A04–0709–CV–502.

Court of Appeals of Indiana.

July 16, 2008.

W. Brent Threlkeld, Breanne J. Strubinger, Threlkeld & Reynolds, LLP, Indianapolis, IN, for Attorneys for Appellant.

Kelli J. Young, Law Office of Kelli J. Young, Indianapolis, IN, Attorney for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary[1]

This case stems from a 2002 automobile accident in which Krista Caughey and her then-husband, Marius Sakalinskas, were rear-ended by a pickup truck. American Family Mutual Insurance Company, who insured both vehicles involved in the collision, informed Caughey that Jackie and Kathy Grover owned the truck and their son Michael Grover ("Michael") drove it on the day of the accident. After the statute of limitations expired, Caughey learned that American Family had provided her with incorrect information because Tim Sinks was the actual driver of the truck on the day in question. As a result, the trial court allowed Caughey to amend her complaint and add Sinks as a party defendant. Sinks brings this interlocutory appeal after the trial court denied his motion to dismiss, which alleged that Caughey failed to bring her claim against Sinks within the applicable two-year statute of limitations and failed to comply with Indiana Trial Rule 15(C). Concluding that Sinks had constructive notice of the lawsuit when American Family was served with the lawsuit and that the "mistake" element of Trial Rule 15(C) was met, we affirm the judgment of the trial court.

### Facts and Procedural History

On June 22, 2002, Caughey was a front seat passenger in a Dodge Stratus operated by her then-husband, Sakalinskas, when a 1994 Ford F-10 pickup truck rear-ended the Stratus at the intersection of U.S. Highway 31 and Stop 11 Road on the south side of Indianapolis in Marion County, Indiana. Caughey did not know who was driving or riding in the truck. Following the collision, Sakalinskas called the police, and a Marion County Deputy Sheriff arrived on the scene and spoke with Sakalinskas as well as Michael and Sinks, the two men associated with the pickup truck. The sheriff did not prepare a crash report.[2]

---

1. We held oral argument in this case on April 21, 2008, in Valparaiso, Indiana. We thank counsel for their oral advocacy and the Valparaiso University School of Law for its hospitality.

2. The sheriff did not prepare an Officer's Standard Crash Report because damages were estimated under $750 and both the automobile and the truck involved in the collision had automobile insurance through the same

Caughey reported the accident and injuries to her automobile insurance carrier, American Family, who then informed Caughey that in addition to providing automobile liability insurance coverage on Sakalinskas' car, it likewise maintained liability coverage on the pickup truck. Thereafter, Caughey obtained legal counsel. On July 3, 2002, American Family learned from Michael that Sinks was driving Michael's truck on a suspended license and did not have insurance at the time of the collision. Thereafter, Anthony C. Meyer, an investigator for American Family, conducted an investigation of the accident, which included an interview with Michael on August 8, 2002. Meyer's notes from this interview state the following:

> On the day of the incident, [Michael] was at work with fellow employee, Tim Sinks, at Jiffy Lube located on the corner of U.S. 31 South and Stop Eleven Road. Sinks advised that he needed a ride to run an errand and [Michael] indicated that he would be "happy to help him out." However, Sinks misinterpreted [Michael's] overture and jumped into his truck and drove away. [Michael] did not mean for Sinks to drive his truck because Sinks was not insured and because [Michael] had spent a lot of money customizing the vehicle. By the time [Michael] got outside, he noticed his truck stopped on 31 with the claimant vehicle stopped in front of it.

Appellant's App. p. 109. On August 16, 2002, Meyer took a recorded statement from Sinks, in which he indicated the following:

Q. And were [you] driving a pick-up truck that belongs to ah, Mike Grover?

A. Yes.

Q. And was it a red Ford F1—150?

A. Yes.

Q. Ok. Ok, briefly how did the collision occur?

A. Ah, the light turned green. We both started to move. She stopped suddenly, I stopped. Just close enough, just to barely make contact with her.

*Id.* at 113.

At the conclusion of its investigation, American Family did not inform Caughey or Caughey's counsel of its findings, which included the ascertained identity of the owner of the pickup truck and the driver of the truck at the time of the collision. Although Caughey was aware that there were possibly two men present at the scene of the accident associated with the pickup truck, she did not know the identity of either of the men. As a result, before filing her complaint, Caughey's counsel spoke with Rachelle Howell, a claims adjuster for American Family, who informed her that Jackie and Kathy Grover owned the pickup truck. Howell incorrectly informed Caughey that Michael was driving the truck on the date of the collision. *Id.* at 84.

On June 18, 2004, four days before the applicable statute of limitations was to expire, Caughey filed a complaint and named Jackie, Kathy, and Michael Grover or "John Doe" as party defendants. Along with the filing of her complaint, Caughey served American Family with notice of her lawsuit through the service of a summons to defendant "John Doe c/o American Family Insurance Group." *Id.* at 99.

On June 24, 2004, Charles F. Robinson ("Attorney Robinson"), on behalf of Ameri-

---

insurance company, American Family. We note that had the sheriff prepared a crash report, Caughey would surely have known Sinks' identity, and this entire problem would have been avoided.

can Family, entered his appearance to represent Jackie, Kathy, and Michael Grover (collectively "Defendants"). In answering Caughey's complaint, Defendants denied that Michael "was operating a vehicle at any [time] relevant to this cause of action" and that "the answering Defendants are without sufficient information with which to form a belief whether the unknown person sued as 'John Doe' [was] operating a vehicle at any [time] relevant to this cause of action." *Id.* at 17. Defendants asserted several affirmative defenses, including that "[t]he damages of Plaintiff, if any, may have been caused by non-parties to this litigation, namely Marius Sakalinskas, Tim Sinks and Tim Small." *Id.* at 18–19. Included within Defendants' answer and affirmative defenses was a motion to dismiss Kathy and Jackie Grover from the suit because the complaint merely alleged that they owned and insured the truck involved in the collision and a motion to strike Caughey's "complaint against John Doe on the issue of liability of an unknown Defendant for the reason that the complaint demonstrates that the statute of limitations has run," and "[t]he filing of a 'John Doe' complaint can never toll the statute of limitations so as to allow the substitution of a real defendant." *Id.* at 20–21. Thereafter, the trial court ordered Kathy and Jackie Grover dismissed from the suit and granted Defendants' motion to strike "John Doe" as a defendant.

On January 6, 2006, Michael filed a motion for summary judgment and included in his designated evidence an affidavit in which Michael stated that he owned the truck but was not driving it on the day of the collision and that on the date of the collision "Tim Sinks drove his Vehicle without his permission and consent." *Id.*

at 36. Thereafter, on December 28, 2006, Caughey filed a motion for leave to file an amended complaint to add Sinks as a party defendant. On January 9, 2007, Caughey filed a motion for leave to file a second amended complaint to add American Family as a party defendant. Michael filed an objection to Caughey's motion to amend, claiming that the statute of limitations for this action had expired and Caughey did not meet the requirements of Indiana Trial Rule 15(C), which, if met, would allow the claim to relate back to the original complaint. Thereafter, the trial court issued an order granting Caughey leave to file a second amended complaint and allowing her to join Sinks and American Family as party defendants.[3] In its order the court stated, in pertinent part:

> And the Court having reviewed said Motion and Plaintiff's proposed Second Amended Complaint and finding therein reasonable proof that the first-named party-Defendant to be joined, Tim Sinks, must have known or should have known that this action would have been brought against him but for a mistake concerning his identity as a proper party and that because of his close relationship with the present Defendant, Michael Grover, it is fair to presume that he, Tim Sinks, anticipated this action, learned of the institution of this action shortly after it was commenced and certainly within the one hundred twenty (120) days after the original Complaint was filed on June 18, 2004, that he will not be prejudiced or unfairly denied the opportunity to present facts or evidence which he would or could have presented had he been expressly named as a party-Defendant in Plaintiff's original Complaint and that justice requires granting

---

3. In Caughey's second amended complaint, she sets forth a breach of contract uninsured motorist claim against American Family.

leave to Plaintiff to amend her original Complaint herein and to add said Tim Sinks as a party-Defendant.[4]

*Id.* at 75.[5] Thereafter, Michael filed an answer to Caughey's second amended complaint in which he admitted "that he was the owner of the 1994 Ford F–10 pickup truck on June 22, 2002," Appellee's App. p. 51, and that "at the time of the collision ... Sinks had taken the truck without the knowledge and/or consent of [Michael] and was using and/or operating said truck without [Michael's] permission and without the permission of any person in lawful use and possession of said truck," *id.* at 7 (capitalization omitted). Sinks then filed a motion to dismiss Caughey's claim for failure to state a claim upon which relief could be granted. Caughey responded, and Sinks filed a reply to Caughey's response.[6] Thereafter, the trial court issued an order denying Sinks' motion to dismiss. This interlocutory appeal ensued.

### Discussion and Decision

 Sinks contends that the trial court erroneously denied his motion to dismiss because the statute of limitations had expired and Caughey's amended complaint did not "relate back" to the original complaint pursuant to Trial Rule 15(C). Generally, the review of a dismissal pursuant to Trial Rule 12(B)(6) is *de novo*, requiring

no deference to the trial court's decision. *Wilhoite v. Melvin Simon & Assocs., Inc.,* 640 N.E.2d 382, 384 (Ind.Ct.App.1994). Matters outside the pleadings cannot be considered; if matters outside the pleadings are considered, the motion becomes one for summary judgment. *Id.;* Ind. Trial Rule 12(B). Here, inasmuch as matters outside the pleadings were presented to the trial court, the procedural posture is more properly characterized as a motion for summary judgment under Trial Rule 56 converted from a Trial Rule 12(B) motion to dismiss. *See id.* On an appeal from a grant or denial of summary judgment, we determine whether the record reveals a genuine issue of material fact and whether the trial court correctly applied the law. *Logan v. Schafer,* 567 N.E.2d 855, 856 (Ind.Ct.App.1991). All doubt as to a fact, or an inference to be drawn, is resolved in favor of the nonmoving party. *Id.* The decision whether to permit amendments to pleadings remains within the discretion of the trial court. *Id.* Absent a manifest showing of abuse of discretion, we will not reverse the trial court's decision.

 The applicable statute of limitations is determined by identifying the nature or substance of the cause of action. *Schuman v. Kobets,* 716 N.E.2d 355, 356

---

4. The trial court incorrectly imputed constructive notice to Sinks based on an "identity of interest." Upon a thorough review of the record, we are unable to locate any information regarding Michael and Sinks' relationship at the time the lawsuit was filed. We know that they worked together at Jiffy Lube and maintained a relationship *at the time of the accident,* but the pertinent time according to Trial Rule 15(C)(1) is the nature of the relationship within 120 days of the commencement of the action. Here, the record does not include any evidence to substantiate that Michael and Sinks maintained a relationship close ·enough to satisfy the "identity of interest" prong of the constructive notice doc-

trine. Indeed, Caughey's counsel acknowledged at oral argument that there is no evidence in the record to show any relationship between Michael and Sinks within 120 days of the commencement of this action. Nonetheless, we believe the trial court ultimately reached the correct result.

5. Once Sinks was added as a party defendant, American Family provided him with legal representation.

6. Additional motions were filed after Sinks' motion to dismiss but are not relevant to the issue at hand.

(Ind.1999). Because Caughey's cause of action involves injury to person, the applicable statute of limitations is two years. Ind.Code § 34-11-2-4. Caughey's petition to amend her complaint to name Sinks as a defendant comes after the two-year statute of limitations expired. However, a party may belatedly add a party defendant after the statute of limitations has run if the requirements of Indiana Trial Rule 15(C) are met. The question, then, is whether Caughey's amended complaint fulfills the requirements of Indiana Trial Rule 15(C). Indiana Trial Rule 15(C) states:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within one hundred and twenty (120) days of commencement of the action, the party to be brought in by amendment:
>
> (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits; and
>
> (2) knew or should have known that but for a mistake concerning the identity of the proper party, the action would have been brought against him.

Thus, in order for an amended complaint changing the party against whom the claim is brought to relate back, it must meet the following requirements: (1) the claim in the amended complaint has to arise out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original complaint; (2) within 120 days after the commencement of the action, the party to be brought into the action must have received notice of the institution of the action so that it will not be prejudiced in maintaining a defense on the merits; and (3) within 120 days after commencement of the action, the party knew or should have known that absent a mistake concerning the identity of the proper party, the action would have been brought against the party to be brought in by the amendment. *Crossroads Serv. Ctr., Inc. v. Coley,* 842 N.E.2d 822, 824–25 (Ind.Ct.App. 2005), *trans. denied.* "The party who seeks relation back bears the burden of proving that the conditions of Trial Rule 15(C) are met." *Id.*

Sinks does not dispute that the claim asserted in Caughey's amended complaint arose out of the conduct, transaction, or occurrence set forth in the original complaint. Rather, Sinks contends that he did not receive notice of the institution of the action within 120 days of the commencement of the action and that he did not know nor should he have known that but for a mistake concerning the identity of the proper party, the action would have been brought against him within the requisite 120 days. We disagree.

## I. Notice

Sinks maintains that he did not receive actual or constructive notice of the institution of the lawsuit within 120 days of the commencement of the action. Notice of the lawsuit may be actual notice or constructive notice. *Porter County Sheriff Dep't. v. Guzorek,* 857 N.E.2d 363, 369 (Ind.2006). Both parties agree that Sinks did not have actual notice. We therefore must determine if Sinks had constructive notice. Specifically, we must determine whether notice of the institution of a lawsuit provided to American Family, in and of itself, constitutes sufficient constructive notice to allow relation back under Trial Rule 15(C). This issue was addressed in *Red Arrow Stables, Ltd. v. Velasquez,* 725

N.E.2d 110 (Ind.Ct.App.2000), *trans. denied.*

In *Velasquez*, Rita Velasquez, while serving as a chaperone at a horse riding activity sponsored by Girl Scouts of Calumet Council, suffered personal injuries after falling from a horse. Thereafter, Velasquez's attorney sent two letters to Esther Kristoff, Calumet Council's Chief Executive Officer and registered agent, both addressed to the "Girl Scouts of Calumet Council." The first letter, addressed to Kristoff, stated:

> We have yet to be in contact with the Girl Scout's liability carrier. I am enclosing a copy of our notice letter and lien regarding our representation of Rita Velasquez with reference to her fall of May 19, 1996. We would appreciate your forwarding this information on to the Girl Scout's liability carrier so that they may handle it appropriately.

*Id.* at 111. The second letter, addressed to "Whom it May Concern" stated "I represent Rita Velasquez in a claim arising out of the accident that occurred on May 19, 1996" and that "a claim for damages is hereby being made on behalf of my client for injuries arising out of the above-stated accident." *Id.* Kristoff faxed both letters to Calumet Council's insurance carrier, St. Paul Fire & Marine Insurance Company. Soon thereafter, Velasquez's attorney filed a complaint for damages regarding the May 19, 1996, horse riding incident. The complaint named "Girl Scout Corporation," among others, as a defendant. A copy of the complaint was issued to the Girl Scout Corporation's registered agent and Velasquez's attorney also sent a copy to St. Paul. When defendant Girl Scout Corporation filed its answer and affirmative defenses, it raised the following affirmative defense:

> Plaintiffs have sued the wrong group of Girl Scouts. Defendant Girl Scout Corporation is a holding company where the only activity is that it owns land in Marion County, Indiana. The land is a camp run by Hoosier Capital Girl Scout Council, Inc. (HCGSC). Neither Defendant Girl Scout Corporation nor HCGSC have any knowledge of the plaintiffs, the other defendants, or the events referred to in plaintiff's Complaint. There are 14 separate Girl Scout Councils in Indiana. All 14 are separate corporations. Plaintiffs have sued the wrong group of Girl Scouts.

*Id.* at 112. Upon receipt of the Girl Scout Corporation's answer, Velasquez's attorney realized that he had mistakenly named the wrong defendant. Pursuant to Indiana Trial Rule 15(C), Velasquez's attorney sought to amend the complaint to add Girl Scouts of Calumet Council as a defendant. The trial court granted the motion and denied two subsequent summary judgment motions filed by Calumet Council. Calumet Council brought an interlocutory appeal challenging the trial court's denial of its summary judgment motion claiming that Rita Velasquez's amended complaint did not relate back to her original complaint under Indiana Trial Rule 15(C). In contrast, Velasquez maintained that Calumet Council received constructive notice of the lawsuit when her attorney served St. Paul with notice of the suit.

In disposing of this matter, a panel of this Court concluded the following:

> Although Calumet Council did not receive actual notice of the lawsuit until almost two months after the statute had run, its insurer, the entity with the right to investigate any claim or suit, the right and duty to defend any claim or suit, and the right to settle any claim or suit, did receive notice of the lawsuit before the tolling of the statute. Accordingly, ... we hold that notification of the lawsuit to St. Paul was constructive notice

to Calumet Council so as to satisfy the requirement of Trial Rule 15(C)(1); namely, that it received notice of the institution of the action such that it will not be prejudiced in the maintenance of its suit.

*Id.* at 116 (quotations & citations omitted).

In applying *Velasquez* to the facts of this case, we conclude that notification of the lawsuit to American Family was constructive notice to Sinks. Here, American Family provided insurance for Michael's truck, the vehicle that was involved in the accident. Within days after the accident, American Family learned that Sinks was driving the truck. A little over a month later, an investigator for American Family took a recorded statement from Sinks, in which he admitted to driving the truck and colliding with Caughey. Despite knowing this information, American Family's representative told Caughey's attorney that Michael and not Sinks was the driver of the truck. Armed with this information, four days before the applicable statute of limitations was to expire, Caughey's attorney served notice of her lawsuit through the service of a summons to Michael and to defendant "John Doe c/o American Family Insurance Group." Appellant's App. p. 99.

We conclude that this notice to American Family was constructive notice to Sinks. Essentially, this suit is a suit seeking insurance proceeds from American Family's liability policy. "[T]he purpose behind the notice requirement is to ensure that the defendant will not be prejudiced in maintaining its defense on the merits." *Guzorek,* 857 N.E.2d at 370. Here, Sinks

could not have been prejudiced in maintaining his defense because it is American Family's insurance proceeds that Caughey seeks, and American Family received a summons within the statute of limitations against "John Doe." Furthermore, at the time of receiving the summons, American Family knew that Sinks was the "John Doe" driver of the truck. *See* Appellant's App. p. 129.

The overarching concern of Trial Rule 15(C) is fairness to the added defendant. When the suit seeks only insurance proceeds and the insurance company had actual notice of the suit, the fairness component is satisfied. See *Ind. Farmers Mut. Ins. Co. v. Richie,* 707 N.E.2d 992, 997–98 (Ind.1999). Thus, notification of the lawsuit to American Family was constructive notice such that it satisfied the notice requirement of Indiana Trial Rule 15(C)(1).[7]

## II. Knowledge of Mistake

■ Sinks maintains that he did not know nor should he have known that he would have been named as a defendant in the original action but for the mistake. We view the knowledge of the mistake from the perspective of American Family. *Velasquez,* 725 N.E.2d at 116. When American Family received a copy of Caughey's complaint that named both Michael and "John Doe" as defendants but not Sinks, it should have known that there was a mistake. From its investigation of the accident, American Family knew that Sinks was the driver of the truck and not Michael. Furthermore, within days before the complaint was filed, Caughey's attor-

---

7. Sinks relies on *Logan* and *Seach v. Armbruster,* 725 N.E.2d 875 (Ind.Ct.App.2000), to support his position that "Caughey has presented no evidence proving that Sinks received notice of Caughey's original Complaint." Appellant's Br. p. 15. However, in *Logan,* the insurance company did not receive notice of the complaint and therefore it is

inapposite. Additionally, unlike in *Seach,* American Family knew of the involvement of the added defendant and before the lawsuit was filed provided the plaintiff with inaccurate information about the added defendant's involvement or lack thereof in the incident in question.

ney had asked its representative who drove the truck and the representative incorrectly identified Michael as the driver.

Recently, our Supreme Court addressed the "knowledge of mistake" requirement in *Guzorek*. *Guzorek* involved a personal injury lawsuit brought by a motorist (Guzorek) against an officer (Falatic) employed by the county sheriff's department for injuries sustained in an automobile accident. Guzorek and her husband filed a complaint naming Falatic as the only defendant. The complaint did not mention the Porter County Sheriff's Department ("PCSD") or Falatic's employment with PCSD. Subsequently, Falatic moved for summary judgment on the basis that he had no personal liability. While Falatic's motion for summary judgment was pending, the Guzoreks moved for leave to amend their complaint to add PCSD as a defendant, which the trial court granted. PCSD then moved for summary judgment, claiming that the amended complaint did not relate back to the original complaint and that the claim against PCSD was therefore time barred by the applicable two-year statute of limitations. The trial court denied this motion, a panel of this Court reversed and directed that summary judgment be granted in favor of PCSD, and the Supreme Court granted transfer. In concluding that the Guzoreks' addition of PCSD as a new defendant related back to the filing of the original complaint, the Court explained that "[t]he 'mistake' condition does not isolate a specific type or form of error in identifying parties, but rather is concerned

fundamentally with the new party's awareness that failure to join it was error rather than a deliberate strategy." *Guzorek*, 857 N.E.2d at 371 (quoting *In re Integrated Res. Real Estate Ltd. P'ship Sec. Litig.*, 815 F.Supp. 620, 644 (S.D.N.Y.1993)). The Court then concluded that

> the Indiana Tort Claims Act clearly provided Officer Falatic with immunity from liability for losses that resulted from acts within the scope of his employment, and the Guzoreks alleged that Falatic was acting within that scope. It is not a reasonable assumption that an opponent's legal strategy was to sue a party who was provided immunity by statute and to omit the party designated as the proper defendant.

*Id.* at 372. Likewise, we conclude that it was not a reasonable assumption that Caughey's legal strategy was to sue Michael, who was not in the vehicle at the time of the collision, and to omit Sinks, the party designated as the proper defendant. We therefore conclude that it was reasonable for the trial court to infer that American Family knew or should have known that but for a mistake Sinks would have been named in the original action.[8]

### Conclusion

■ Having determined that all the requirements of Trial Rule 15(C) have been met, we conclude that Sinks had constructive notice of this suit within 120 days of its commencement and knew or should have known that but for a mistake he would have been named as a defendant in the original action. As such, the trial

8. We are not presented with and do not address any issues as to: whether Sinks is covered as an insured under the policy issued by American Family to Grover on the pickup driven by Sinks; whether American Family has acted in bad faith as to Sinks or Caughey; whether by virtue of the constructive notice to Sinks resulting from the involvement of American Family in this case would limit Sinks' personal liability to Caughey; whether Caughey has a claim for under or uninsured insurance coverage under her policy with American Family; or whether Sinks has any claim other than one for coverage against American Family.

court did not abuse its discretion in allowing Caughey to amend her complaint and add Sinks as a party defendant.[9]

Affirmed.

SHARPNACK, SR. J., and BARNES, J., concur.

---

9. Here, we have what appears to be a tangled web of procedural posturing with American Family at the forefront in a seeming attempt to "game" the system. We have consistently rejected a "gaming view" of litigation proceedings. *See Outback Steakhouse of Fla., Inc. v. Markley,* 856 N.E.2d 65, 76 (Ind.2006). The purpose behind discovery and pretrial procedures is to "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *U.S. v. Procter & Gamble Co.,* 356 U.S. 677, 682, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958).