

FILED

Feb 11 2015, 10:03 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEYS FOR APPELLANTS | ATTORNEYS FOR APPELLEE |
|---|---|
| Kevin W. Betz | Daniel D. Trachtman |
| Sandra L. Blevins | Erica K. Drew |
| Jamie A. Maddox | Wooden & McLaughlin LLP |
| Betz+Blevins | Indianapolis, Indiana |
| Indianapolis, Indiana | |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jeffrey M. Miller and Cynthia S. Miller | February 11, 2015 |
| *Appellants,* | Court of Appeals Case No. 49A05-1401-PL-45 |
| v. | Appeal from the Marion Superior Court |
| | Honorable Michael D. Keele, Judge |
| Kristine C. Danz, | Cause No. 49D07-1003-PL-014761 |
| *Appellee* | |

**Friedlander, Judge.**

[1] Jeffrey M. Miller and Cynthia S. Miller (the Millers) appeal the grant of summary judgment in favor of Kristine C. Danz on their complaint for damages resulting from defamation *per se*, defamation *per quod*, invasion of privacy – false light, tortious interference with a business relationship, intentional infliction of emotional distress, and loss of consortium. The Millers

present several issues for our review, which we consolidate and restate as: Did the trial court properly grant summary judgment in favor of Danz?

[2] We affirm.

[3] Jeffrey Miller was president and CEO of Junior Achievement of Central Indiana, Inc. (JACI) from September 1994 until his retirement on December 31, 2008. Jennifer Burk succeeded Miller as President and CEO of JACI. After his retirement from JACI, Miller continued in the role of President of the Experiential Learning and Entrepreneurship Foundation (the Foundation), a separate organization that supports JACI, until February 2010.

[4] In May 2008, during Miller's tenure as president of JACI, a three-way collaborative project was announced between JACI, the Foundation, and Ivy Tech Community College for the Foundation to construct a $4-million culinary school on the JACI campus to be financed in part by a $2-million grant from the Central Indiana Community Foundation/Eugene Glick family (CICF). As a result of this collaboration, Ivy Tech would lease the culinary school from the Foundation once the school was fully constructed and furnished with the latest culinary equipment. Construction began in August 2009 but was suspended in January 2010 because CICF stopped paying for the invoices submitted by the Foundation even though there was sufficient money in the fund that had been allocated for the culinary project. Apparently, CICF had concerns about how the funds for the culinary project were being handled.

Kristine Danz is a partner at Ice Miller, LLP. In January/February 2010, Danz's then-husband was a board chairman for JACI. According to Danz's deposition testimony, sometime in January/February 2010, Mr. Danz was "upset and angry" and in a "venting manner" communicated to her that there had been or was going to be an audit of JACI and the culinary project because there was a belief that funds allocated thereto may not have been managed properly. *Appellants' Appendix* at 551, 547-48, respectively. Danz also stated that Mr. Danz seemed surprised that Miller was being considered for a position with the City of Indianapolis because Mr. Danz "felt like [Miller's] performance at Junior Achievement wasn't very strong." *Id*. at 550.

During January or February 2010, Danz inquired of Sarah Cotterill (Ms. Cotterill),[1] an associate partner at Ice Miller and then-wife of Chris Cotterill, the Chief of Staff for the Mayor of Indianapolis, whether Miller was in fact being considered for a position with the Mayor's office.[2] Danz communicated to Ms. Cotterill the information she had received from Mr. Danz concerning an audit of the culinary project and Miller's involvement therein. Danz told Ms. Cotterill that she did not know the outcome of the audit, but indicated that Ms. Cotterill may want to inform Mr. Cotterill that he may want to inquire further into the matter before hiring Miller to work in the Mayor's office. In turn, Ms. Cotterill relayed the information she received from Danz to Mr. Cotterill. Danz admitted that the information she relayed to Ms. Cotterill was the kind of

[1] Ms. Cotterill recalls that the conversation with Danz may have taken place in 2009.
[2] Danz stated that her conversation with Ms. Cotterill occurred during a chance meeting in the hallway at Ice Miller.

information that "would cause one to pause in wanting to deal with a person." *Id*. at 556.

[7] Prior to Danz's conversation with Ms. Cotterill, Miller at least had a job opportunity with the Mayor's office. Beginning in August of 2009 and continuing through approximately March of 2010, Miller engaged in several discussions with Mr. Cotterill regarding the position of Senior Policy Advisor to the Mayor. Miller maintains that these discussions encompassed what Miller could bring to the position of Senior Policy Advisor, that the purpose of the position was to connect the business community to the Mayor's office and to tie the not-for-profit community closer together, a start date (being the end of February 2010), and a salary range. In a follow-up conversation, Mr. Cotterill told Miller that an announcement regarding Miller's position with the Mayor's office would be made toward the end of February 2010.

[8] Ultimately, however, Miller did not receive the position as Senior Policy Advisor with the Mayor's office. On March 19, 2010, Miller recorded a telephone conversation he had with Mr. Cotterill in which Mr. Cotterill told Miller that a lawyer had contacted his wife and informed her that Miller or JACI "were going to be sued by the CICF for misappropriation of funds." *Id*. at 477. During this conversation, Miller identified Danz as a possible source of the comments made to Ms. Cotterill.[3] Mr. Cotterill continued, informing Miller

---

[3] The relevant part of the recorded telephone conversation between Miller and Mr. Cotterill follows:
 Jeff Miller: So where did that come from?
 Chris Cotterill: Some lawyer contacted Sarah, and I think that that lawyer's at Ice Miller. I didn't really get into that with her.
 Jeff Miller: Okay. That helps me, because I can trace that actually.

that his name was also associated with a conversation regarding concerns about "how the money moved around" for the culinary project in which JACI was involved. *Id*. at 478. In light of this information, Mr. Cotterill told Miller that part of his "professional responsibility is to do a 10-foot-pole rule" between the Mayor's Office and Miller. *Id*. at 481.

[9] The Millers filed their complaint on March 31, 2010, asserting claims for defamation *per se*, defamation *per quod*, invasion of privacy – false light, tortious interference with a business relationship, intentional infliction of emotional distress, loss of consortium, and damages resulting from each. Initially, JACI, CICF, Jennifer Burk, and Brian Payne were named as defendants. The Millers thereafter filed a series of amended complaints by which multiple persons and entities were added as defendants. Eventually, on February 27, 2012, the Millers filed their Fourth Amended Complaint in which they named "John Doe #8, a partner, employee or agent of Ice Miller, LLP" (John Doe #8) as a defendant in the action and alleged that John Doe #8 told Ms. Cotterill, who in turn told Mr. Cotterill, that "CICF was planning to sue Mr. Miller for misappropriation of funds." *Id*. at 236.

[10] On February 28, 2013, the Millers filed a Fifth Amended Complaint in which they substituted Danz for John Doe #8, claiming that they first learned of

---

Chris Cotterill:  Yeah, I mean –
Jeff Miller:  There's a . . . Harry Danz who works—who is on the executive committee at JA[CI]; his wife works at Ice Miller.
Chris Cotterill:  Okay.  And I—
Jeff Miller:  So that would make sense.
*Id*. at 344.

Danz's identity as John Doe #8 through the deposition of Ms. Cotterill taken on January 18, 2013. Specifically, the Millers claimed in the Fifth Amended Complaint that it was Danz who told Ms. Cotterill that "CICF was planning to sue Mr. Miller for misappropriation of funds." *Id*. at 262. The Fifth Amended Complaint pleads multiple theories against Danz, including defamation, invasion of privacy – false light, tortious interference with business or contractual relationships, intentional infliction of emotional distress, and conspiracy or concerted action.

[11] Danz filed a motion for summary judgment, a brief in support of her motion for summary judgment, and a designation of evidence on August 30, 2013. Danz's primary argument[4] in support of summary judgment in her favor was that the claims asserted by the Millers accrued no later than March 19, 2010,[5] and thus, the Millers' filing of the Fifth Amended Complaint against her nearly three years later was barred by the applicable two-year statute of limitation.[6] The Millers filed their response to Danz's motion for summary judgment on October 4, 2013. The Millers argued that pursuant to Ind. Trial Rule 15(C), Danz was properly substituted for John Doe #8, even though such substitution

---

[4] Danz also asserted in her brief in support of summary judgment that the Millers' claims failed on their merits.

[5] This is the date Miller recorded the telephone conversation with Mr. Cotterill in which Mr. Cotterill explained to Miller that the reason he was not going to be brought on as a Senior Policy Advisor with the Mayor's office was because of information concerning an audit and/or possible misappropriation of funds by Miller that had been related to him by Ms. Cotterill. Danz asserts that Miller knew he had been damaged at least as of this point in time.

[6] It is undisputed that all of the Millers' claims against Danz are subject to a two-year statute of limitation. *See* Ind. Code Ann. § 34-11-2-4 (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly) ("[a]n action for . . . injury to person or character . . . must be commenced within two (2) years after the cause of action accrues").

occurred after the expiration of the applicable two-year statute of limitation, because Danz had constructive notice of the lawsuit before the statute of limitation expired. On October 22, 2013, Danz filed a reply brief in support of her motion for summary judgment in which she specifically asserted that the substitution of her as a defendant did not satisfy the requirements of T.R. 15(C). The trial court held a summary judgment hearing on November 21, 2013.[7] During this hearing, the Millers argued that Ind. Trial Rule 17(F), in conjunction with T.R. 15(C), permitted the insertion of Danz's name for John Doe #8. After the submission of post-argument briefs, the trial court granted Danz's motion for summary judgment and directed that final judgment be entered in an order dated January 10, 2014.[8] The Millers timely filed a Notice of Appeal on January 29, 2014.

[12] "When reviewing a trial court's ruling on a motion for summary judgment, this court stands in the shoes of the trial court and applies the same standards in deciding whether to affirm or reverse the ruling." In doing so, we must construe all factual inferences in the nonmoving party's favor and resolve all doubts as to the existence of a genuine issue against the moving party. *Chang v. Purdue Univ.,* 985 N.E.2d 35 (Ind. Ct. App. 2013), *trans. denied.* A trial court's grant of summary judgment is clothed with a presumption of validity, and the appellant bears the burden of demonstrating that the grant of summary

---

[7] At the hearing, the parties' arguments were focused solely upon whether the Fifth Amended Complaint naming Danz was time-barred by the applicable statute of limitations.

[8] The trial court did not set forth the basis for its entry of judgment in favor of Danz.

judgment was erroneous. *W.S.K. v. M.H.S.B.*, 922 N.E.2d 671 (Ind. Ct. App. 2010).

[13] On appeal, the Millers contend that Danz's argument that the substitution of her for John Doe #8 was not timely is at odds with the plain language of T.R. 17(F), which provides that "[w]hen the name or existence of a person is unknown, he may be named as an unknown party, and when his true name is discovered his name may be inserted by amendment *at any time.*" (emphasis supplied). Danz's response is that the Millers have not established that the Fifth Amended Complaint inserting Danz for John Doe #8 meets the requirements of Ind. Trial Rule 15(C) and therefore relates back to the filing of the original complaint. Specifically, T.R. 15(C) provides:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment *changing the party* against whom a claim is asserted relates back if the foregoing provision is satisfied and, within one hundred and twenty (120) days of commencement of the action, the party to be brought in by amendment:
>
> (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits; and
>
> (2) knew or should have known that but for a mistake concerning the identity of the proper party, the action would have been brought against him.

(emphasis supplied). The threshold question to be answered in this case thus concerns interpretation of the "at any time" language of T.R. 17(F) in a situation where the applicable statute of limitation expired prior to the request

to amend the complaint. In deciding this question, we must consider the interplay between T.R. 17(F) and T.R. 15(C).

In considering T.R. 17(F) and T.R. 15(C), we must also keep in mind that the general purpose of a statute of limitation is to encourage the prompt presentation of claims. *Havens v. Ritchey,* 582 N.E.2d 792 (Ind. 1991). Statutes of limitation find their justification in necessity and convenience rather than in logic. *Id.* They represent expedients, rather than principles. *Id.* They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. *Id.*

We now turn to the question before us. We begin by looking at the history of T.R. 17(F). Under the predecessor to T.R. 17(F), section 397 of the Indiana Revised Statutes of 1881, a plaintiff, "ignorant of the name of a defendant," could designate a defendant "by any name" in any pleading or proceeding, and "when his true name is discovered, the pleading or proceeding" could be "amended accordingly, either before or after service of the summons." This provision was carried forward into the twentieth century and codified in section 2-1070 of Burns Indiana Statutes Annotated (1967 Repl.). In 1970, section 2-1070 was repealed, and T.R. 17(F), using substantially different language than its predecessors, was enacted. Even though the notion underlying T.R. 17(F) has been in existence in some version for over a hundred years, questions remain as to its purpose and how it operates in situations where the relevant statute of limitation has run. *See* William F. Harvey, 2 Indiana Practice, § 17.11

(2000). Interestingly, we have found no reported Indiana cases that have specifically addressed the application of T.R. 17(F).

[16] The Millers, however, direct us to *Sinks v. Caughey*, 890 N.E.2d 34 (Ind. Ct. App. 2008). Citing the *Sinks* case as support, the Millers graft the requirements of T.R. 15(C) into the application of T.R. 17(F). The Millers then make their case that the requirements of T.R. 15(C) were met because Danz had at least constructive notice within the appropriate time frame. The Millers therefore maintain that T.R. 17(F) permitted the substitution of Danz for John Doe #8 regardless of expiration of the applicable statute of limitation.

[17] The Millers misread the *Sinks* case. Although a John Doe complaint was filed in that case, the John Doe party was eventually dismissed from the action and the plaintiff sought an amendment to add a new party to the action after the expiration of the applicable statute of limitation.[9] On appeal, the court

---

[9] The facts of *Sinks* were that the plaintiff was involved in a car accident and was aware that there were two men at the scene, but did not know the identity of either man. Before filing her complaint, the plaintiff spoke with a claims adjuster with American Family, the insurance company, who identified the owners of the other vehicle and incorrectly identified the owner's son as the driver of the other vehicle at the time of the accident. Four days prior to the expiration of the applicable statute of limitations, the plaintiff filed her complaint against the owners of the other vehicle, their son, and "John Doe." Eventually, the trial court dismissed the owners of the other vehicle from the suit and granted the defendants' motion to strike "John Doe" as a defendant. The remaining defendant filed a motion for summary judgment on grounds that he was not the driver of the other vehicle at the time of the accident, but that another individual, identified as Sinks, was. The plaintiff sought to amend the complaint nearly two and one-half years after expiration of the statute of limitations to name Sinks as a party defendant.

The court concluded that the filing of the original complaint and notice given to American Family, which entity was aware from its own investigation that Sinks was the driver of the other vehicle, constituted constructive notice to Sinks. In focusing on fairness to the added defendant, the primary concern of T.R. 15(C), this court noted that American Family insurance received notice within the statute of limitation when it received the summons against "John Doe." This court further noted that American Family knew the driver of the other vehicle involved in the accident was Sinks, and not any of the defendants named by the plaintiff in her complaint relating to the accident. Ultimately, the court concluded that it was reasonable to conclude that American Family knew or should have known that but for a mistake, Sinks would have been named in the original action. The Court, finding that the requirements of T.R. 15(C) were met, concluded that the trial court properly permitted the plaintiff to file a second amended complaint.

addressed whether the addition of a proper defendant after the applicable statute of limitation expired related back to the filing of the original complaint. The court's analysis focused solely upon whether the requirements of T.R. 15(C) were met.

[18]   We find that the case of *Berns Constr. Co., Inc. v. Miller*, 491 N.E.2d 565 (Ind. Ct. App. 1986), *summarily aff'd in relevant part by* 516 N.E.2d 1053 (Ind. 1987), provides some guidance as to application of T.R. 17(F). Although our Supreme Court granted transfer in *Berns* because of a disparity among Court of Appeals opinions concerning competing statutes of limitation and statutes of repose, the *Berns* opinion also addressed relation back of an amended complaint in light of T.R. 15(C), T.R. 17(F), and Ind. Trial Rule 21(A). In that case, the plaintiffs filed a complaint against certain defendants and named other unknown defendants pursuant to T.R. 17(F). The plaintiffs sought to amend their complaint to name Berns Construction as a defendant two years and seven months after his cause of action accrued, which was after the applicable statute of limitation for his claim had expired. In rejecting the plaintiffs' claim that T.R. 17(F) permitted relation back upon a subsequent amendment of their John Doe complaint after the statute of limitation had expired, the court noted that, as a general rule, "if a new defendant is added by amendment, the amendment must occur prior to the running of the statute of limitation."[10] *Berns Constr. Co.,*

---

[10] The court cited *Wojcik v. Almase*, 451 N.E.2d 336 (Ind. Ct. App. 1983) as direct support for such conclusion. In *Wojcik*, a products liability action, the court's analysis was primarily concerned with when the cause of action accrued. There is no discussion of T.R. 17(F), and the court, citing T.R. 15(C) simply states, "it does not appear that Wojcik's amended complaint adding Deseret as a party would relate back so as to avoid the statute of limitations." *Wojcik v. Almase*, 451 N.E.2d at 342.

*Inc. v. Miller*, 491 N.E.2d at 573. The court intimated that an amendment to insert a real party in interest for a previously named unknown party is an amendment to add a new defendant. In other words, an amendment in this regard constituted a new and independent claim as to the now-named party.[11] The *Berns* Court continued and identified a line of cases that permits the addition of an entirely new defendant after the statute of limitation has run *if* the requirements of T.R. 15(C) are met.

[19] With these cases in mind, what is to be made of the language of T.R. 17(F) that an amendment to the pleadings to name a previously unknown defendant may be made "at any time"? Interpretation of the trial rules are guided by the rules of statutory construction. *See Noble County v. Rogers,* 745 N.E.2d 194 (Ind. 2001). Thus, as with statutes, our objective when construing the meaning of a rule is to ascertain and give effect to the intent underlying the rule. *See Turner v. Bd. of Aviation Comm'rs,* 743 N.E.2d 1153 (Ind. Ct. App. 2001), *trans. denied.* We are also mindful that "the Rules of Trial Procedure are to be construed together and harmoniously if possible." *Rumfelt v. Himes,* 438 N.E.2d 980, 983 (Ind. 1982). Where a rule has not previously been construed, the express language of the rule controls the interpretation. *Rumfelt v. Himes*, 438 N.E.2d 980. If the language of a rule is clear and unambiguous, it is not subject to judicial interpretation. *Spears v. Brennan,* 745 N.E.2d 862 (Ind. Ct. App. 2001).

---

[11] In this regard, we find that the insertion of a real party in interest for a previously named unknown defendant after expiration of the statute of limitation is akin to "changing a party" within the meaning of T.R. 15(C).

[20] I believe the purpose of T.R. 17(F) is to allow a party to be named "[w]hen the name or existence of a person is unknown." The Rule continues and provides that an amendment to name a previously unknown defendant may be made "at any time." The current version of the Rule employs substantially different wording than its predecessors and I have found no other jurisdiction that has a rule drafted in such a way. This indicates to me that the words were carefully chosen. Moreover, the words chosen are clear and unequivocal; the plain meaning of the words used in T.R. 17(F) is that an amendment to name a previously unknown defendant may be made "*at any time.*" In light of the express language of the Rule, I see no need to engraft a due diligence requirement onto T.R. 17(F). If the view of my colleagues is what the drafters of T.R. 17(F) intended, T.R. 17(F) should be revised to provide for such a requirement.

[21] Moreover, I do not find my interpretation of T.R. 17(F) to be at odds with general policies of fairness and finality underlying the trial rules. Indeed, I agree with the Court in *Berns Constr. Co., Inc. v. Miller*, that "[t]he filing of a John Doe complaint can never toll the statute [of limitations] as to a substituted real defendant." 491 N.E.2d at 573 (citing 2 W. Harvey Indiana Practice Sec. 15.4 at 20 (1986 Supp.)). To be sure, as I noted above, an amendment under T.R. 17(F) constitutes a new and independent claim as to the now-named party. Therefore, it must also be shown that the requirements of T.R. 15(C) have been met. In this respect, I agree with Judge Vaidik that T.R. 15(C) "operates as a check on Rule 17(F)." It remains, however, that the amendment is not defeated

by application of T.R. 17(F) because that rule specifically provides that an amendment may be made "at any time."

[22] The purpose of the doctrine of relation back under current T.R. 15(C) is to strike the proper balance between the basic goal of the Trial Rules to promote decisions on the merits and the policies underlying statutes of limitation, the most significant of which are to provide fairness and finality to defendants. *Porter Cnty. Sheriff Dep't v. Guzorek*, 857 N.E.2d 363 (Ind. 2006). Thus, while T.R. 17(F) liberally allows amendments to pleadings in cases where a previously unknown party was named, T.R.15(C) seeks to ensure that the now-named defendants "receive notice of claims within a reasonable time, and thus are not impaired in their defense by evidence that is lost or diminished in its clarity because of the undue passage of time." *See Olech v. Vill. of Willowbrook,* 138 F.Supp.2d 1036, 1041 (N.D. Ill. 2000); *see also* William F. Harvey, 2 *Indiana Practice: Rules of Procedure Annotated* § 15.7, at 70 (3d ed. 2000). It is T.R. 15(C) that serves to achieve the goals of finality and fairness to defendants.

[23] This perhaps explains the analysis of the court in *Berns Constr. Co., Inc. v. Miller*, *infra*. As I noted above, implicit in that court's analysis is that an amendment was permissible under the clear language of T.R. 17(F). When the defendants challenged the amendment by raising the expiration of the statute of limitations as an affirmative defense, T.R. 15(C) became the vehicle by which to consider whether the amendment was fair to the defendant. The *Berns* court's analysis therefore focused on whether the requirements of T.R. 15(C) had been met.

In summary, I find that T.R. 17(F) permits the insertion of the name of a real party in interest "at any time."  In cases where the statute of limitation has expired and the opposing party raises the expiration of the statute of limitations as an affirmative defense, T.R. 15(C) provides the framework for determining whether the complaint against the now-named party, as amended pursuant to T.R. 17(F), relates back.  *See Crossroads Serv. Ctr., Inc. v. Coley*, 842 N.E.2d 822 (Ind. Ct. App. 2005), *trans. denied*.

The party who seeks relation back under T.R. 15(C) bears the burden of proving that (1) the claim in the amended complaint arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original complaint;[12] (2) within 120 days after the commencement of the action, the party to be brought into the action must have received notice of the institution of the action so that it will not be prejudiced in maintaining a defense on the merits; and (3) within 120 days after commencement of the action, the party knew or should have known that absent a mistake concerning the identity of the proper party, the action would have been brought against the party to be brought in by the amendment.  *Id.*

Here, the Millers filed their original complaint on March 31, 2010.  In their Fourth Amended Complaint, filed just short of two years after the original complaint (i.e., February 27, 2012), the Millers added John Doe #8 as a defendant to the action.  One year later, and almost three years after the action

---

[12] No argument is made that the Fifth Amended Complaint did not arise "out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."  *See* T.R. 15(C).

accrued and the original complaint was filed, on February 28, 2013, the Millers filed their Fifth Amended Complaint to insert Danz for John Doe #8. The filing of the Fifth Amended Complaint was after expiration of the applicable two-year statute of limitations governing the underlying claims. T.R. 17(F) does not, as the Millers claim, operate to permit the filing of the Fifth Amended Complaint.

[27] With regard to the requirements of T.R. 15(C), we begin by considering the mistake requirement. Typically, the "but for a mistake" clause of T.R. 15(C)(3) encompasses cases that involve misnomers and mistaken identity. Here, the Millers equate their inability to specifically identify Danz within the limitation period as a mistake falling with the ambit of T.R. 15(C). In response, Danz maintains that not knowing the identity of the defendant is not a "mistake" as is required under T.R. 15(C).

[28] Under the current version of T.R. 15(C), courts have found the mistake requirement to be satisfied in instances involving both mistakes of fact and mistakes of law.[13] 3-15 *Ind. Pleading & Practice with Forms* § 15.14 (2005). In *Crossroads Serv. Ctr., Inc. v. Coley*, this court, looking to federal decisions applying Federal Rule 15(C), upon which T.R. 15(C) is based, noted that Federal Rule 15(C)(3) "permits an amendment to relate back to the original complaint when an error has been made concerning the identity of the proper party and where

---

[13] This is most clearly demonstrated by federal cases allowing relation back where plaintiffs pursuing § 1983 claims had incorrectly named immune institutional entities rather than individual defendants. *See, e.g., Donald v. Cook Cty. Sheriff's Dep't,* 95 F.3d 548 (7th Cir. 1996); *Woods v. IUPUI,* 996 F.2d 880 (7th Cir. 1993).

that party is chargeable with the knowledge of that mistake, but relation back is not permitted when there is a lack of knowledge of the proper party." 842 N.E.2d at 826 (citing *Baskin v. City of Des Plaines*, 138 F.3d 701, 704 (7th Cir. 1998); *Delgado-Brunet v. Clark*, 93 F.3d 339, 344 (7th Cir. 1996)); *see also Berns Const. Co., Inv. v. Miller*, 491 N.E.2d 565 (noting that "[t]here is no relation back where there is a lack of knowledge of the proper party") (citing *Wood v. Worachek*, 618 N.E.2d 1225 (7th Cir. 1980)).

[29]     Here, the Millers filed their Fourth Amended Complaint to name John Doe #8. The Millers acknowledge that they did not know of the identity of John Doe #8 until after taking the deposition of Sarah Cotterill in January 2013, nearly three years after the original complaint was filed. The Millers did not make a mistake as to the identity of John Doe #8, they simply lacked knowledge as to the proper party. The Millers have not established the mistake requirement of T.R. 15(C).[14] It cannot therefore be said that their Fifth Amended Complaint relates back to the filing of the original complaint. Having been filed after expiration of the statute of limitation applicable to the underlying claims, the Fifth Amended Complaint was time-barred. The trial court did not err in granting Danz's motion for summary judgment.

[30]     Judgment affirmed.

---

[14] I acknowledge that the Millers provided us with additional, non-binding authority that would perhaps lend itself to reaching a different result in this case. My reading of Indiana cases to date, however, does not favor the analysis followed in those jurisdictions.

Vaidik, C.J., and May, J., concur in result.

# IN THE
# COURT OF APPEALS OF INDIANA

Jeffrey M. Miller and Cynthia S. Miller

*Appellants,*

v.

Kristine C. Danz,

*Appellee*

February 11, 2015

Court of Appeals Cause No. 49A05-1401-PL-45

Appeal from the Marion Superior Court
Honorable Michael D. Keele, Judge
Cause No. 49D07-1003-PL-014761

**Vaidik, Chief Judge, concurring in result.**

In this case, the lead opinion concludes that Jeffrey and Cynthia Miller's fifth amended complaint—in which they sought to name Kristine Danz as John Doe #8—does not relate back to the filing of the Millers' original complaint. I agree, but I reach that conclusion because the facts show that the Millers knew that Danz was John Doe #8 as early as March 2010—before they commenced this action and nearly three years before they sought the amendment at issue. See slip op. at 4-5. The lead opinion's conclusion, however, is based on an interpretation of Indiana Trial Rules 15(C) and 17(F). This interpretation creates a serious problem for a plaintiff who—for any number of reasons—does not know a defendant's identity when filing a complaint. Under Judge Friedlander's reasoning, a plaintiff who diligently pursues such information

may have no legal recourse when he obtains it. Because I cannot endorse such a result, I respectfully concur in result.

[32] As the lead opinion points out, this case turns on the interaction between Trial Rules 15(C) and 17(F). Rules pertaining to the amendments of pleadings should be read in conjunction with one another, and here, Rule 15(C) operates as a check on Rule 17(F).

[33] Trial Rule 17(F) provides that "[w]hen the name or existence of a person is unknown, he may be named as an unknown party, and when his true name is discovered his name may be inserted by amendment at any time." The lead opinion interprets Rule 17(F) to allow a plaintiff to change a complaint's caption at any time—but does not permit the action to continue as to the newly named defendant. This interpretation renders Rule 17(F) meaningless and potentially denies plaintiffs their day in court. I propose an alternative interpretation.

[34] I would read Rule 17(F) to allow the insertion of the name of a real party in interest at any time provided the plaintiff used due diligence to discover the defendant's identity. Inserting a due-diligence requirement does not conflict with the phrase "at any time." And under this interpretation, a plaintiff who diligently seeks a defendant's identity beyond the statute of limitations may have legal recourse against that defendant—provided that the plaintiff can also satisfy the requirements of Rule 15(C). Other jurisdictions impose a similar due-diligence requirement in this context. *See, e.g.*, *Sparks v. Alpha Tau Omega*

*Fraternity, Inc.*, 255 P.3d 238, 243 (Nev. 2011); *Price v. Clark*, 21 So. 3d 509, 525 (Miss. 2009); *Ex parte Nationwide Ins. Co.*, 991 So. 2d 1287, 1291 (Ala. 2008); *DeRienzo v. Harvard Indus., Inc.*, 357 F.3d 348, 353 (3d Cir. 2004) (applying New Jersey law); *Regjovich v. First Western Invs., Inc.*, 997 P.2d 615, 621 (Idaho 2000); *Ensey v. Culhane*, 727 A.2d 687, 690 (R.I. 1999). Although what constitutes due diligence is typically a fact-sensitive inquiry, courts may consider whether the defendant concealed his identity or obstructed the plaintiff's investigation, whether the plaintiff utilized discovery or judicial mechanisms in attempting to learn the defendant's identity, and any unreasonable delay by the plaintiff in amending their pleadings once the defendant's identity is discovered. *See Sparks*, 255 P.3d at 243 (citations omitted).

[35] Interpreting Rule 17(F) to require due diligence would not lead to open-ended statutes of limitation in cases where a defendant's identity is unknown, however, because a plaintiff must also satisfy the requirements of Trial Rule 15(C).[15] Rule 15(C) provides:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within one hundred and twenty (120) days of

---

[15] I do not believe this Court's analysis in *Berns Construction Company v. Miller*, 491 N.E.2d 565, 572 (Ind. Ct. App. 1986), *reh'g denied*, *summarily aff'd*, 516 N.E.2d 1053 (Ind. 1987), prohibits this interpretation. In *Berns* we held that "if a new defendant is added by amendment, the amendment must occur prior to the running of the statute of limitation" but noted that the addition of a new defendant after the statute of limitations has run *is* permitted if the requirements of Rule 15(C) are met. 491 N.E.2d at 573. To the extent the lead opinion relies on *Berns* for its conclusions with respect to Rule 15(C)'s mistake requirement, I disagree for the reasons explained below.

commencement of the action, the party to be brought in my amendment:

(1) Has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits; and

(2) Knew or should have known that but for a mistake concerning the identity of the proper party, the action would have been brought against him.

[36] The four requirements set forth in Rule 15(C)—the same conduct, transaction, or occurrence requirement; the 120-day notice, no-prejudice requirements; and the mistake requirement—protect defendants from stale claims in much the same way statutes of limitation do.

[37] While I agree with Judge Friedlander that a plaintiff must satisfy Rule 15(C) in this situation, I believe that the lead opinion interprets Rule 15(C)'s mistake requirement in a manner that disproportionally favors defendants. *See* T.R. 15(C)(2) ("An amendment changing the party against whom a claim is asserted relates back if . . . the party to be brought in by amendment . . . knew or should have known that but for a mistake concerning the identity of the proper party, the action would have been brought against him."). Under the lead opinion's reasoning, a plaintiff can never satisfy Rule 15(C)'s mistake requirement if they lack knowledge of a defendant's identity.

[38] Admittedly, there is precedent to support Judge Friedlander's position. In *Crossroads Service Center, Inc. v. Coley*, 842 N.E.2d 822, 825-26 (Ind. Ct. App. 2005), *trans. denied*, this Court held:

> Because we find no Indiana cases applying the revised Trial Rule
> 15(C) and because the Indiana Trial Rules are based on the federal
> rules, it is appropriate to look to federal decisions for guidance in
> determining the outcome of this case. *Foor v. Town of Hebron*, 742
> N.E.2d 545, 552 (Ind. Ct. App. 2001). The Seventh Circuit has stated
> that Federal Rule 15(c)(3) only permits an amendment to relate back
> to the original complaint when an error has been made concerning the
> identity of the proper party and where that party is chargeable with the
> knowledge of that mistake, but relation back is not permitted when
> there is a lack of knowledge of the proper party. *Baskin v. City of Des
> Plaines*, 138 F.3d 701, 704 (7th Cir. 1998); *Delgado-Brunet v. Clark*, 93
> F.3d 339, 344 (7th Cir. 1996).

(footnote omitted). But after *Coley*, the United States Supreme Court decided

*Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538 (2010). In *Krupski*, the Supreme

Court held that the focus should be the would-be defendant's knowledge—not

the plaintiff's. *See* 560 U.S. at 548 ("By focusing on Krupski's knowledge, the

Court of Appeals chose the wrong starting point. The question under Rule

15(c)(1)(C)(ii) is not whether Krupski knew or should have known the identity

of Costa Crociere as the proper defendant, but whether Costa Crociere knew or

should have known that it would have been named as a defendant but for an

error."). And since *Krupski*, some courts have recognized that lack of

knowledge may be considered a mistake. *See Ferencz v. Medlock*, 905 F. Supp. 2d

656, 668 (W.D. Pa. 2012) ("[T]he Third Circuit considers a plaintiff's lack of

knowledge regarding a defendant's identity to constitute a 'mistake' within the

meaning of Rule 15(c)(1)(C)(ii), and thus permits relation-back amendments of

complaints to substitute a real name for a John Doe."); *Archibald v. City of

Hartford*, 274 F.R.D. 371, 377 (D. Conn. 2011) ("In *Krupski* . . . the Supreme

Court arguably confirmed that the reference to 'mistake' in Rule 15(c)(1)(C) does not necessarily bar relation back for a plaintiff who failed to properly name a defendant because he lacked knowledge of that defendant's name."); *Abdell v. City of New York*, 759 F. Supp. 2d 450, 457 (S.D.N.Y. 2010) ("After *Krupski*, it is clear that a mistake 'concerning the proper party's identity' under Rule 15(c) includes lack of knowledge regarding the conduct or liability of that party."). In light of *Krupski*, and provided that the other requirements of Rule 15(C) are satisfied, I cannot agree that an amendment should be disallowed merely because a plaintiff "lacked knowledge as to the proper party." Slip op. at 16.

Our trial rules aim to strike a balance between promoting decisions on the merits and providing closure, finality, and fairness to defendants. I believe that both interests are served by reading a due-diligence requirement into Rule 17(F), recognizing that Rule 15(C) operates as check on Rule 17(F), and acknowledging that lack of knowledge as to a defendant's identity may constitute a mistake for purposes of Rule 15(C). I believe Judge Friedlander construes these rules too narrowly and to the detriment of plaintiffs, potentially denying them their day in court. On the other hand, I believe Judge May construes Rule 17(F) too broadly and to the detriment of defendants, potentially allowing stale claims to proceed long after statutes of limitation have run, memories have faded, and evidence has been lost. I respectfully concur in result, however, because the facts show that the Millers knew that Danz was John Doe #8 before they commenced this action and nearly three years before they filed their fifth amended complaint. For that reason, I agree that the

Millers' fifth amended complaint does not relate back to the filing of the original complaint, and the trial court properly granted summary judgment for Danz.

Jeffrey M. Miller and Cynthia S. Miller

*Appellants,*

v.

Kristine C. Danz,

*Appellee*

February 11, 2015

Court of Appeals Case No. 49A05-1401-PL-45

Appeal from the Marion Superior Court
Honorable Michael D. Keele, Judge
Cause No. 49D07-1003-PL-014761

**May, Judge, concurring in result.**

Both the lead opinion and Chief Judge Vaidik's concurrence proceed on the premise "we must *consider the interplay between* T.R. 17(F) and T.R. 15(C)," (Slip op. at 9), and "this case turns *on the interaction between* Trial Rules 15(C) and 17(F). (Slip op. at 2) (Vaidik, C.J., concurring). As the relation back provision of T.R. 15(C) does not apply to the situation before us, there is no such "interplay" or "interaction." The trial court's judgment may be affirmed by the proper application of T.R. 17(F) alone, and I accordingly concur in the result.

T.R. 15(C) governs "amendment" of pleadings, but subsection (C), which addresses relation back, does not apply to the situation before us, *i.e.*, adding the correct name of a "John Doe" defendant. That situation is explicitly governed by T.R. 17(F) alone.

[42]   T.R. 15(C) first addresses the relation back requirement that the "claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading," but that is not the question before us.  It then addresses amendments "changing the party against whom a claim is asserted."  That part of the rule provides there is relation back if

> the party to be brought in by amendment:
>
> (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits; *and*
>
> (2) knew or should have known that *but for a mistake* concerning the identity of the proper party, the action would have been brought against him.

Ind. R. Trial P. 15 (emphasis added).

[43]   The "relation back" provisions of T.R. 15(C) do not apply to a "John Doe" situation, because the T.R. 17(F) situation where the name or existence of a party is *unknown* is not the same as the T.R. 15(C) situation where there has been a *mistake* about the identity of the proper party.  In other words, *adding* a party because there has been a mistake about who should be the proper defendant, is governed by T.R. 15(C).  That is not the same situation as *giving a name* to a previously-unidentified party who is already a "John Doe" defendant.  T.R. 17(F) applies when "the name or existence of a party is unknown," and provides "his *name* may be inserted by amendment at any time."  Correcting a mistake is not the same as learning an unknown party's name.

[44] T.R. 15(C) governs the relation back of an amendment due to a mistake concerning the identity of a party, but the failure to identify individual defendants when the plaintiff knows that such defendants must be named is not a "mistake." *See, e.g., Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013) ("the lack of knowledge of a John Doe defendant's name does not constitute a 'mistake of identity'") (addressing Fed. R. Civ. P. 15); *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995), *modified*, 74 F.3d 1366 (2d Cir. 1996) (Fed. R. Civ. P. 15(c) explicitly allows, under certain circumstances, the relation back of an amendment due to a 'mistake' concerning the identity of the parties, but the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake); *Cooper v. Rhea Cnty., Tenn.*, 302 F.R.D. 195, 200 (E.D. Tenn. 2014) (naming a defendant as "John Doe" in a complaint is not considered a "mistake" under Fed. R. Civ. P. 15(c)).

[45] Because there was no "mistake," T.R. 15(C) has no application to the case before us, and we need not and should not decide whether there is "relation back." It is clear from the language of T.R. 17(F) that a complaint may be amended to name a "John Doe" party even when an amendment premised on "mistake" might not relate back. Instead, in the case before us we must determine the independent effect of the language in T.R. 17(F) that "when the name or existence of a person is unknown, he may be named as an unknown

party, and when his true name is discovered his name may be inserted by amendment *at any time*."[16]  (Emphasis added.)

[46]     While I believe the relation back provisions in T.R. 15(C) have no application to the case before us because there was no "mistake," I agree with the lead opinion and the concurrence that the summary judgment for Danz was not error, and I accordingly concur in the result.

---

[16] While many jurisdictions permit "John Doe" pleadings and have adopted rules to govern them, the "at any time" language appears to be unique to the Indiana rules.  *See, e.g.*, Nev. R. Civ. P. 10: "A party whose name is not known may be designated by any name, and when the true name is discovered, the pleading may be amended accordingly."  *And see* Ala. R. Civ. P. 9:

> When a party is ignorant of the name of an opposing party and so alleges in the party's pleading, the opposing party may be designated by any name, and when that party's true name is discovered, the process and all pleadings and proceedings in the action may be amended by substituting the true name.

I agree with the reasoning articulated in the concurring opinion that T.R. 17(F) allows the insertion of the name of a real party in interest at any time provided the plaintiff used due diligence to discover the defendant's identity, and I agree Danz was entitled to summary judgment because the facts show the Millers knew Danz was John Doe #8 before they commenced this action and nearly three years before they filed their fifth amended complaint.  But as explained above, I do not agree with the lead opinion and the concurrence that a plaintiff must independently satisfy T.R. 15(C) in this situation.